191 P.3d 1062

**Roger Scott MOYLE, Plaintiff–Appellant–Petitioner,**

v.

**Y & Y HYUP SHIN, CORP., and TTJJKK Inc., both d/b/a Do Re Mi Karaoke, Defendants–Appellees–Respondents.**

**No. 26582.**

Supreme Court of Hawai'i.

Sept. 4, 2008.

As Amended Sept. 11, 2008.

---

Gary Victor Dubin, Honolulu (Long H. Vu on the briefs), for the plaintiff-appellant-petitioner Roger Scott Moyle, Personal Representative of the Estate of Richard Todd Moyle, Deceased.

Roy F. Hughes, Honolulu (Steven T. Brittain on the briefs), for the defendants-appellees-respondents Y & Y Hyup Shin, Corp. and TTJJKK Inc., both d/b/a Do Re Mi Karaoke.

MOON, C.J., LEVINSON, AND DUFFY, JJ., NAKAYAMA, J., concurring and dissenting separately, and ACOBA, J., concurring separately.

Opinion of the Court by LEVINSON, J.

On February 21, 2008, the plaintiff-appellant-petitioner Roger Scott Moyle, as personal representative of the estate of Richard Todd Moyle (Moyle), deceased,[1] filed an application for a writ of certiorari, urging this court to review the published opinion of the Intermediate Court of Appeals (ICA) in *Moyle v. Y & Y Hyup Shin Corp.*, 116 Hawai'i 388, 173 P.3d 535 (App.2007). Moyle argues that the ICA gravely erred in affirming the circuit court's March 5, 2004 final judgment, because the circuit court: (1) incorrectly instructed the jury as to the foreseeability of "criminal acts" in a premises liability negligence case; (2) erred in requiring Moyle to lay a foundation prior to admitting certain police reports into evidence; (3) incorrectly instructed the jury as to the duty to obtain police assistance and medical aid for an assaulted club patron in a premises liability negligence case; (4) incorrectly instructed the jury as to liability for selling alcohol to intoxicated customers in a premises liability negligence case "with respect to providing security and aid"; (5) incorrectly instructed the jury as to the foreseeability of a "dangerous condition" in a premises liability case resulting from a "mode of operation"; (6) incorrectly included a non-party on the special verdict form; and (7) erred in "deny-ing a new trial after clear and convincing relevant and material evidence was found[ ] proving that [the defendants-appellees-respondents Y & Y Hyup Shin Corp., TTJJKK Inc., and unnamed Doe individuals and entities' (collectively, the Respondents')] trial representatives had lied about who actually owned the club at the time [Moyle] was injured."

For the reasons discussed herein, we hold that the ICA erred in concluding (1) that the jury instructions regarding the foreseeability of third-party criminal acts given by the circuit court were not defective and (2) that the circuit court correctly included a non-party on the special verdict form. We therefore vacate the ICA's November 23, 2007 judgment and the circuit court's March 5, 2004 judgment. This matter is remanded to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

On the evening of September 18, 1999, until approximately 4:00 a.m., Moyle patronized the Irish Rose, a club in Waikk, where he had "a few drinks." The Irish Rose closed at 4:00 a.m., at which time Moyle moved on to the Do Re Mi Club[2] (the club) by taxi, arriving at approximately 4:20 a.m. Moyle spent roughly two hours in the club, where he drank two to three beers. At the club he met another patron, Simi Tupuola (Tupuola). As Moyle was exiting the back door of the club at about 6:00 a.m., he was tripped by Tupuola at the threshold of the door and fell onto the sidewalk. Tupuola assaulted and robbed Moyle, seriously injuring him. The assault and robbery took place on the sidewalk outside the rear of the club. Moyle called the police on his cellular phone and reported the incident.

1. Richard Todd Moyle died on August 31, 2004. Roger Scott Moyle was substituted as plaintiff-appellant by order of this court on December 21, 2004.

2. Kyong Suk Son was the owner of TTJJKK, Inc., and owned the club from 1993 until approximately 1999. Karin Hyon Suk Yu was an owner of Y & Y Hyup Shin Corp., which purchased the club at some point between 1999 and September 2000.

B. *Procedural Background*

On September 19, 2001, Moyle filed a complaint in the circuit court against the Respondents. The complaint sought damages from the Respondents and alleged that his injuries were sustained as a "direct and proximate result" of the Respondents' "negligence, actions and/or omissions."

Nearly two years later, on July 9, 2003, the Respondents filed a motion for leave to file a third-party complaint against Tupuola, claiming that the facts demonstrated that Tupuola was responsible for Moyle's injuries. The circuit court denied the motion on August 1, 2003, stating:

> This case has been pending since September, 2001. So I think it's rather untimely with an upcoming trial four months away. And also I think there's at least a question about what's the main reason [for the filing of the motion]. But in addition, there's the question of whether there really is a claim for contribution against Mt. Tupuola in light of the manner in which the complaint was drafted.

Jury trial began on February 11, 2004. Moyle testified on his own behalf, describing the events of the night of the incident. Moyle expressed a belief that the club was selling patrons alcohol on the night of the incident. He further testified that he consumed several alcoholic beverages prior to his arrival at the club and "two or three beers" at the club. Moyle next called Kyong Suk Son (Son) to testify, who stated that she sold the club to Karin Hyon Suk Yu (Yu) in 2000 and was not managing the club on the night of the incident. Finally, Moyle called Yu as a witness, who testified that she was one of the owners of the club at the time of the assault.

At the conclusion of the trial, the following jury instructions were given over Moyle's objections:

> Negligence is doing something which a reasonable person would not do or failing to do something which a reasonable person would do. It is the failure to use that care which a reasonable person would use to avoid injury to himself, herself, or other people or damage to property.

In deciding whether a person was negligent, you must consider what was done or not done under the circumstances as shown by the evidence in this case.

In determining whether a person was negligent, it may help to ask whether a reasonable person in the same situation would have foreseen or anticipated that injury or damage could result from that person's action or inaction. If such a result would be foreseeable by a reasonable person and if the conduct reasonably could be avoided, then not to avoid it would be negligence.

Business establishments that hold themselves open to the public, such as proprietors of bars and taverns and clubs where liquor is allowed or known to be on the premises, owe their customers a specific duty to exercise reasonable care to protect them from foreseeable injury at the hands of other patrons.

A landholder only has a duty to protect against criminal acts of third persons if such acts are reasonably foreseeable.

Under ordinary circumstances, criminal acts are not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risks.

There can be no liability for civil damages against a person at the scene of a crime for failure to obtain assistance from law enforcement or medical personnel. Therefore you may not find in favor of the plaintiff and against either or both defendants in this case even if you find that one or both defendants failed to obtain assistance. A person cannot be sued for failure to summon assistance under Hawai['i] law.

Intoxicated liquor consumers may not seek recovery from the establishment which sold them alcohol; they are solely responsible for their own voluntary intoxication.

In the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises does not constitute actionable negligence.

Moyle also objected to Tupuola's name being placed on the special verdict form for purposes of apportioning fault. Upon concluding its deliberations, the jury rendered a verdict in favor of the Respondents, which allocated responsibility for the incident thusly: (1) zero percent responsibility for Y & Y Hyup Shin Corp.; (2) zero percent responsibility for TTJJKK Inc.; (3) five percent responsibility for Moyle; and (4) ninety-five percent responsibility for Tupuola. The jury also found Moyle's damages to be $0.00. Judgment was entered on March 5, 2004.

On May 15, 2004, Moyle filed a motion requesting that the circuit court set aside the judgement, grant a new trial, and impose sanctions on the Respondents. He claimed that the Respondents perjured themselves in their testimony on material issues in the case and that the circuit court committed reversible error in including Tupuola on the special verdict form. On April 20, 2004, the circuit court denied the motion. On May 19, 2004, Moyle filed a timely notice of appeal.

## C. *Appellate Proceedings*

On appeal before the ICA, Moyle argued that the circuit court erred in: (1) excluding police reports at trial that allegedly would have impeached witness testimony adduced by the Respondents; (2) giving incorrect jury instructions on (a) the foreseeability of criminal acts in a premises liability negligence case, (b) an establishment's duty to obtain law enforcement and/or medical assistance for an injured crime victim who is assaulted on its premises, and (c) the law with respect to the liability of an establishment selling alcohol to intoxicated consumers; (3) refusing to instruct the jury properly as to the liability of a business establishment for premises liability negligence where it adopts a marketing plan or general mode of operation that produces a dangerous condition; (4) including Tupuola's name on the special verdict form; and (5) denying Moyle's motion for, *inter alia*, a new trial.

On November 8, 2007, the ICA issued a published opinion affirming the circuit court's judgment. *See Moyle*, 116 Hawai'i at 403, 173 P.3d at 550. The ICA held that (1) the circuit court did not err in excluding the police reports because Moyle "fail[ed] to address all of the alternative bases given by the circuit court for [their] exclusion," *id.* at 396, 173 P.3d at 543; (2) although the circuit court's instruction on negligence failed to instruct the jury to evaluate foreseeability in light of the totality of the circumstances, Moyle invited the error, and there was no plain error in giving the instruction because the issue did not pertain to the integrity of the fact-finding process, *id.* at 397–400, 173 P.3d at 544–47; (3) the circuit court did not err in giving its jury instruction regarding a bystander's duty to assist, *id.* at 400–01, 173 P.3d at 547–48; (4) the circuit court did not err in declining to give Moyle's proposed jury instruction on a business's mode of operation, *id.* at 401, 173 P.3d at 548; (5) because Moyle "could have pursued an action for his injuries against Tupuola," but elected not to, the circuit court did not abuse its discretion by including Tupuola's name in the special verdict form, *id.* at 402, 173 P.3d at 549; and (6) the circuit court did not abuse its discretion in denying Moyle's motion for a new trial, because Moyle "failed to raise any arguments or offer any evidence that indicate fraud on the court ha[d] occurred[,]" *id.* at 403, 173 P.3d at 550. On November 23, 2007, the ICA filed its judgment on appeal.

On February 21, 2008, Moyle filed a timely application for a writ of certiorari. This court accepted the application on March 4, 2008 and heard oral argument on July 3, 2008.

## II. *STANDARDS OF REVIEW*

### A. *Application For A Writ Of Certiorari*

The acceptance or rejection of an application for a writ of certiorari is discretionary. Hawai'i Revised Statutes (HRS) § 602–59(a) (Supp.2007). In deciding whether to grant the application, this court considers whether the ICA's decision reflects "(1) [g]rave errors of law or of fact[ ] or (2) [o]bvious inconsistencies ... with [decisions] of th[is] court, federal decisions, or [the ICA's] own decision[s]" and whether "the magnitude of those errors or inconsistencies dictat[es] the need for further appeal." HRS § 602–59(b).

## B. *Admissibility Of Evidence*

■ As a general rule, this court reviews evidentiary rulings for abuse of discretion. *Kealoha v. County of Hawai'i*, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993). However, when there can only be one correct answer to the admissibility question, or when reviewing questions of relevance under [Hawai'i Rules of Evidence (HRE)] Rules 401 and 402, this court applies the right/wrong standard of review. *Id.* at 319, 844 P.2d at 676; *State v. White*, 92 Hawai'i 192, 204–05, 990 P.2d 90, 102–03 (1999).

*Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

## C. *Jury Instructions*

■ " 'The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.' " *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286, 297, 141 P.3d 459, 470 (2006) (quoting *State v. Haili*, 103 Hawai'i 89, 101, 79 P.3d 1263, 1275 (2003)).

## III. *DISCUSSION*

### A. *The ICA Erred In Holding That The Circuit Court's Jury Instructions Were Not Defective.*

Moyle contends that the circuit court instructed the jury improperly on the issues of negligence and foreseeability with inconsistent, confusing, and contradictory instructions. Moyle further argues that, when read together, the instructions not only failed to inform the jury that "foreseeability" should be determined by the "totality of the circumstances" test, but that they also misfocused the jury by instructing it on matters of alleged negligence that were not before it for decision. This court reviews the circuit court's issuance or refusal of a jury instruction on the basis of whether, when read and considered as a whole, the instructions given are " 'prejudicially insufficient, erroneous, inconsistent, or misleading.' " *Stanford Carr,*

111 Hawai'i at 297, 141 P.3d at 470 (quoting *Haili,* 103 Hawai'i at 101, 79 P.3d at 1275).

### 1. *Instructions regarding foreseeability of third-party criminal acts*

Moyle argues that the jury was not correctly instructed regarding the foreseeability of third-party criminal acts. The following instructions were given by the circuit court:

Business establishments that hold themselves open to the public, such as proprietors of bars and taverns and clubs where liquor is allowed or known to be on the premises, owe their customers a specific duty to exercise reasonable care to protect them from foreseeable injury at the hands of other patrons.

A landholder only has a duty to protect against criminal acts of third persons if such acts are reasonably foreseeable.

Under ordinary circumstances, criminal acts are not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risks.

The instruction in the first paragraph was originally proposed by Moyle as Plaintiff's Proposed Instruction No. 5. The proposed instruction was given by agreement as modified by the circuit court, which removed the second paragraph: "Such a duty is said to arise from a 'special relationship' which such business establishments have with their public invitees, to protect them against unreasonable risk of physical harm, and to give them first aid after they know or have reason to know that they have been injured, and to care for them until they can be cared for by others." The instruction in the second paragraph was proposed by the circuit court as Court's Instruction A and was given by agreement. The instruction in the third paragraph, the Defendants' Requested Jury Instruction No. 3 [hereinafter, the "criminal acts instruction"], was given over Moyle's objection, which he elucidated thusly in the circuit court's chambers:

[The court]: [The criminal acts instruction] will be given as modified over objection by [Moyle]. The modification is at the

beginning[;] we're inserting three words, "under ordinary circumstances."

[Moyle]: The objection here is very clear under the *Maguire[ v. Hilton Hotels Corp.,* 79 Hawai'i 110, 113–15, 899 P.2d 393, 396–98 (1995),] case. The way it [is] worded here begs the question. The issue here before the factfinder, the jury, is whether in the circumstances of this case[,] according to *Maguire[,]* it was reasonably foreseeable that this kind of criminal act might occur. This instruction starts off by assuming the negative of what is supposed to be decided by [the] trier of fact. It says "under ordinary circumstances criminal acts are not reasonably to be expected." Well, it's the facts that will determine whether or not it's reasonably to be expected under the *Maguire* standard, and there is really no such thing as "under ordinary circumstances" now.

■ The law with respect to a landowner's liability for the criminal acts of third parties is clear in Hawai'i. This court has generally declined to impose a duty on landowners to protect against the criminal acts of a third party, inasmuch as, "under ordinary circumstances, criminal acts are. not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risk." *Doe v. Grosvenor Properties (Hawaii) Ltd.,* 73 Haw. 158, 162, 829 P.2d 512, 515 (1992). However, when there is a "special relationship" between a landowner and someone on its property, the landowner has a duty to protect the person from the criminal acts of third parties if those criminal acts are "reasonably foreseeable." *Id.* at 163–65, 829 P.2d at 515–16; *Maguire,* 79 Hawai'i at 113–15, 899 P.2d at 396–98. One such "special relationship" between parties is that of the business visitor, one who "is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Grosvenor Properties,* 73 Haw. at 164, 829 P.2d at 515–16 (citing *Restatement (Second) of Torts* § 332 (1965)).

■ The Respondents' retort to Moyle's contention that the above sequence of instructions, particularly the criminal acts instruction, were confusing and contradictory is to note that, *inter alia,* the criminal acts instruction "is a correct statement of the law." And, in a vacuum, so it is. But, it is also an inapplicable statement of the law in this case, where Moyle was unquestionably a business visitor as defined by this court, and neither party has suggested anything to the contrary. *See id.; Maguire,* 79 Hawai'i at 113, 899 P.2d at 396. The criminal acts instruction articulates the rationale of the *general* rule regarding landowner liability for third-party criminal acts as set forth in *Grosvenor Properties,* which applies when there is no special relationship between the parties. 73 Haw. at 163, 829 P.2d at 515. *Grosvenor Properties* further held that

status distinctions remain important in the decision to create exceptions to the general rule that it is unreasonable to impose a duty to anticipate and control the actions of third persons.... Exceptions to the general rule that there is no duty to protect may arise when justified by the existence of some special relationship between the parties.

*Id.* at 163, 829 P.2d at 515 (citing, *inter alia, Restatement (Second) of Torts,* § 315 (1965)). Because there is no question that a "special relationship" existed between Moyle and the Respondents, the criminal acts instruction is misplaced in the present case insofar as it states the inapplicable "general rule" of *Grosvenor Properties,* as opposed to the relevant exception for special relationships. Furthermore, although the two instructions preceding the criminal acts instruction correctly articulated the scope of a landowner's duty to protect a business visitor from third persons, they did not cure the inconsistent and misleading criminal acts instruction, because the jury was not apprised that the existence of a special relationship is not an "ordinary circumstance." *Id.; Stanford Carr,* 111 Hawai'i at 297, 141 P.3d at 470 (quoting *Haili,* 103 Hawai'i at 101, 79 P.3d at 1275). Accordingly, the instructions regarding the foreseeability of third-party criminal acts were prejudicially erroneous. *Stanford Carr,* 111 Hawai'i at 297, 141 P.3d at 470

(quoting *Haili,* 103 Hawai'i at 101, 79 P.3d at 1275), and the ICA erred in approving the circuit court's instructions. We therefore vacate the circuit court's judgment and remand the matter to the circuit court for a new trial. *See State v. Eberly,* 107 Hawai'i 239, 245, 112 P.3d 725, 731 (2005) (vacating and remanding due to improper jury instructions).[3]

2. *Instructions regarding liability of an establishment serving alcohol to intoxicated patrons*

■ Moyle further takes issue with the following instructions:

Intoxicated liquor consumers may not seek recovery from the establishment which sold them alcohol; they are solely responsible for their own voluntary intoxication.

In the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises does not constitute actionable negligence.

Moyle contends that he never raised the issue of an establishment's liability for selling alcohol and that these instructions obfuscated the question at hand, namely, whether "the [Respondents were] negligent in not providing adequate security." Moyle did allege in his complaint and in his trial testimony that the Respondents were serving alcoholic beverages; however, Moyle never claimed that "dram shop" liability was the basis of his claim against the Respondents. In considering Moyle's contention that the instructions may have served to "egregiously mis-focus[ ]" the jury, this court looks to whether, when read and considered as a whole, the instructions were "prejudicially insufficient, erroneous, inconsistent, or misleading."

*Stanford Carr,* 111 Hawai'i at 297, 141 P.3d at 470 (quoting *Haili,* 103 Hawai'i at 101, 79 P.3d at 1275).

The above instructions were modeled upon our decisions in *Bertelmann v. Taas Assoc.,* 69 Haw. 95, 735 P.2d 930 (1987), and *Winters v. Silver Fox Bar,* 71 Haw. 524, 797 P.2d 51 (1990), which clarified the scope of Hawai'i's common law "dram shop action," as enunciated by *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980). This court "emphatically reject[ed]" the contention that intoxicated liquor consumers can seek recovery from the bar or tavern which sold them alcohol. Drunken persons who harm themselves are solely responsible for their voluntary intoxication and cannot prevail under a common law or statutory basis." *Winters,* 71 Haw. at 527–28, 797 P.2d at 53 (quoting *Bertelmann,* 69 Haw. at 100, 735 P.2d at 933).

In this case, it is clear that Moyle in no way asserted that the Respondents were liable to him on the basis of their selling alcohol. While these instructions do not comport with the theory of liability put forth by Moyle, Moyle does not cite, nor have we uncovered, any Hawai'i cases holding that a trial court abuses its discretion by instructing the jury on bases of *non-liability,* as long as such instructions are not "prejudicially insufficient, erroneous, inconsistent, or misleading," *Stanford Carr,* 111 Hawai'i at 297, 141 P.3d at 470 (quoting *Haili,* 103 Hawai'i at 101, 79 P.3d at 1275). These instructions perform the function of identifying for the jury a theory of liability upon which the Respondents *could not* be found liable. *See Winters,* 71 Haw. at 528, 797 P.2d at 53 ("[Dram shop legislation was] created to protect the general public from drunk driving

---

3. Moyle argues in the alternative that the foreseeability instructions were in error due to the circuit court's failing to instruct the jury on the "totality of the circumstances" test, as required by *Doe v. Grosvenor Center Associates,* 104 Hawai'i 500, 511, 92 P.3d 1010, 1021 (App.2004) ("[W]hen determining the foreseeability of a particular criminal act committed by a third party, we look to the totality of circumstances." (citing, *inter alia, Grosvenor Properties,* 73 Haw. 158, 829 P.2d 512)). We take note of the ICA's holdings (1) that this argument was waived by Moyle's having proposed and then withdrawn such an instruction and (2) that plain error was not ap-

parent in the circuit court's failure to give such an instruction *sua sponte. Moyle,* 116 Hawai'i at 398–400, 173 P.3d at 545–47. We decline to address this issue, inasmuch as we have already determined that the circuit court's foreseeability instructions were prejudicially erroneous and that Moyle is entitled to a new trial. However, we note that, with the foreseeability of third-party criminal acts being of paramount importance in this case, upon remand it would be judicious for the circuit court to give a "totality of the circumstances" instruction even if Moyle, through error or stratagem, again requests the instruction's withdrawal.

accidents, not to reward intoxicated liquor consumers for the consequences of their voluntary inebriation." (Citation omitted.)) In other words, the trial court's decision to give the above instructions over objection by Moyle was a prophylactic act, which clarified the contours of the Respondents' potential liability. Accordingly, these instructions were not "prejudicially insufficient, erroneous, inconsistent, or misleading," *Stanford Carr*, 111 Hawai'i at 297, 141 P.3d at 470 (quoting *Haili*, 103 Hawai'i at 101, 79 P.3d at 1275), and the circuit court did not err in providing them to the jury.

### 3. Instruction regarding the duty to obtain assistance from law enforcement or medical personnel

Moyle next takes issue with the following jury instruction:

There can be no liability for civil damages against a person at the scene of a crime for failure to obtain assistance from law enforcement or medical personnel. Therefore you may not find in favor of the plaintiff and against either or both defendants in this case even if you find that one or both defendants failed to obtain assistance. A person cannot be sued for failure to summon assistance under Hawai['i] law.

Moyle first argues that the circuit court's instruction misled the jury into focusing on an issue not at hand, namely the "personal duty of the bartender or employee to render assistance," when the correct issue was that of "the duty of the employer ... to provide adequate security that could have rendered assistance to Moyle ... pursuant to an innkeeper's and a public club's tort duty to

protect its patrons from reasonably foreseeable danger." The ICA disagreed, stating that:

the individuals who had been working at [the club] elected not to call the police or medical assistance upon becoming aware of the ongoing assault against [Moyle]. Premises liability, and liability of an individual bystander for failure to act, are two separate issues, and this instruction effectively and appropriately explained to the jury that civil liability cannot be based on the latter.

*Moyle*, 116 Hawai'i at 401, 173 P.3d at 548. The jury instruction was modeled after HRS § 663–1.6 (1993),[4] a "Good Samaritan" statute. Moyle claims that the issue is not the "duty of an innocent bystander to come to the aid of a crime victim," but the duty of the Respondents, a "business establishment in a 'special relationship' to Moyle," to come to Moyle's aid.

■ As the ICA noted, Moyle fails to proffer any authority to support this contention, in violation of Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7).[5] *Moyle*, 116 Hawai'i at 401, 173 P.3d at 548. Nevertheless, in light of this court's policy of hearing cases on the merits when possible, we exercise our discretion to consider the merits of Moyle's argument. *See O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994).

■ First, Moyle's argument seems to claim that HRS § 663–1.6 only applies to "uninvolved bystander[s]," or, in the alternative, that HRS § 663–1.6 does not apply to "business establishments in a 'special relationship'" to a patron. A plain reading of

---

4. HRS § 663–1.6 provides in relevant part:

(a) Any person at the scene of a crime who knows that a victim of the crime is suffering from serious physical harm shall obtain or attempt to obtain aid from law enforcement or medical personnel if the person can do so without danger or peril to any person. Any person who violates this subsection is guilty of a petty misdemeanor.

(b) Any person who provides reasonable assistance in compliance with subsection (a) shall not be liable in civil damages unless the person's acts constitute gross negligence or wanton acts or omissions, or unless the person receives or expects to receive remuneration.

(c) Any person who fails to provide reasonable assistance in compliance with subsection (a) shall not be liable for any civil damages.

5. HRAP Rule 28(b)(7) provides in relevant part:

(b) Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

. . . .

(7) The argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.

the statute does nothing to suggest such inclusivity or exclusivity, and, in fact, demonstrates that it clearly applies to the actions of "[a]ny person," *see supra* note 6, which includes the Respondents.

▮▮▮▮ Moyle also repeatedly raised the issue of whether the Respondents came to his aid. Moyle's complaint stated that

> [t]he incident was observed by management and other employees of [the club] immediately nearby, who nevertheless did nothing, *failed to render any aid or assistance to him whatsoever or even to call the police,* in violation of *its duty to the general public* and to its patrons, including Moyle.

Moyle's counsel elicited direct testimony from Moyle that an alleged Club employee, upon seeing Moyle lying on the ground following the assault, "close[d] the door and pulled the curtains." In light of Moyle's having raised the issue of the Respondents' duty to render aid, it was not "an issue not at hand," and it was not error for the circuit court to instruct the jury on the Respondents' liability stemming from a failure to render aid. In addition, the ICA correctly noted that "[p]remises liability, and liability of an individual for failure to act, are two separate issues," and that the circuit court's instruction properly delineated that civil liability "could not be based on the latter." *Moyle,* 116 Hawai'i at 401, 173 P.3d at 548.

B. *The ICA Did Not Gravely Err In Determining That Moyle Had Failed To Demonstrate That The Circuit Court Erred In Excluding The Police Reports, Inasmuch As He Failed To Address Each Alternative Basis Of The Circuit Court's Decision.*

Moyle claims that the ICA gravely erred in upholding the circuit court's exclusion of police reports proffered by Moyle, which he intended to use (1) to impeach Son's likely testimony that there had been no prior assaults at the club and (2) to show that Moyle's assault was foreseeable in light of the prior incidents at the club described in the reports. The circuit court excluded Moyle's use of the police reports on the following grounds: (1) the subpoena directed

to the Honolulu Police Department's (HPD) custodian of records was served after the discovery cut-off date; (2) the subpoena was in violation of the circuit court's pretrial order stating that "any and all exhibits need to be marked ahead of time"; (3) the reports' probative value was substantially outweighed by the danger of unfair prejudice and considerations of undue delay pursuant to HRE Rule 403; and (4) Moyle failed to lay a proper foundation for the reports.

Moyle asserted in his opening brief that the circuit court erred in relying on "the so-called *Warshaw* doctrine (first requiring proof of prior or substantially similar acts) [which] had been discarded by our appellate courts in favor of a broader foreseeability negligence test."

In its published opinion, the ICA noted that:

> Notwithstanding a party's right to appeal, generally there is a presumption that a judgment by a trial court is valid. *Stafford v. Dickison,* 46 Haw. 52, 62, 374 P.2d 665, 671 (1962). Moreover, [Moyle] bears the burden of demonstrating his "allegations of error against the presumption of correctness and regularity that attend the decision of the lower court." *Ala Moana Boat Owners' Ass'n v. State,* 50 Haw. 156, 158, 434 P.2d 516, 518 (1967). Where an appealing party fails to raise and argue a point of error, the point may be deemed waived by the reviewing court. HRAP Rule 28(b)(7) (2000). Thus, where alternative bases given by the lower court for a contested decision are left unaddressed by an appealing party, the appealing party has failed to demonstrate the existence of an error.

*Moyle,* 116 Hawai'i at 395, 173 P.3d at 542.

The ICA concluded that, apart from whether Moyle was required to lay a foundation for the police reports, he had not demonstrated the existence of error due to his failure to address the circuit court's three alternative bases for excluding the reports. *Id.* at 395, 173 P.3d at 542. ("Although [Moyle] contests the first basis, he does not contest the second, third or fourth reasons given by the circuit court for finding the

police reports inadmissable.") However, Moyle arguably did address a second basis, the requirement that "any and all exhibits need to be marked ahead of time and everything else," with his assertion that "the issue concerning whether the production of the police records was done too close to trial to permit their use ... was a totally different issue than using them to prove thereafter that a party was lying at trial."

Nonetheless, even if the ICA failed to recognize Moyle's contravention of the circuit court's second basis for exclusion, Moyle still neglected to address the circuit court's third and fourth bases for exclusion in his opening brief or in his application for a writ of certiorari. First, Moyle never claimed that the circuit court abused its discretion in determining that the police reports' potential prejudice substantially outweighed their probitive value, pursuant to HRE Rule 403. See Ranches v. City and County of Honolulu, 115 Hawai'i 462, 468, 168 P.3d 592, 598 (2007) ("[T]he standard of review for exclusion of evidence under HRE 403 is the abuse of discretion standard. Evidentiary decisions based on this rule, which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." (citations and brackets omitted)). Moyle also failed to address the circuit court's ruling that service of the subpoena for the HPD's custodian of records postdated the discovery cut-off date. Because Moyle failed to raise such "allegations of error against the presumptions of correctness and regularity" inherent in the circuit court's decisions, Ala Moana Boat Owners' Ass'n, 50 Haw. at 158, 434 P.2d at 518, the ICA did not err in upholding the circuit court's exclusion of the police reports.

C. *The ICA Did Not Err In Affirming The Circuit Court's Refusal To Give Moyle's Proposed "Mode Of Operation" Jury Instruction.*

Moyle argues that the ICA gravely erred in concluding that the circuit court

correctly declined to give his proposed jury instruction No. 3, which articulated the "mode of operation" rule that this court adopted in Gump v. Wal–Mart Stores, Inc., 93 Hawai'i 417, 5 P.3d 407 (2000) ("Gump II"). Under the rule, an injured plaintiff need not prove that the defendant had actual notice of the specific instrumentality causing his or her injury, where the commercial establishment should have been aware of the potentially hazardous conditions that arose from its mode of operation. See id. 93 Hawai'i at 420–21, 5 P.3d at 410–11. Moyle asserts that the circuit court should have given his proposed mode of operation instruction, because both Son and Yu testified that they were aware of the need for security, but nevertheless continued to run the club without security as part of their intended mode of operation. Thus, Moyle implicitly argues that the potentially hazardous condition arising out of the club's operation was violent individuals who injure the club's patrons.

*Gump II* clarified the scope of the mode of operation rule:

> [T]he application of the rule is *limited to circumstances such as those of this case.* Wal–Mart chooses, *as a marketing strategy,* to lease store space to McDonald's in order to attract more customers and encourage them to remain in the store longer. Wal–Mart also chooses, for the most part, not to prevent patrons from carrying their McDonald's food into the Wal–Mart shopping area. This mode of operation gave rise to the hazard that caused Gump's injury.

93 Hawai'i at 421, 5 P.3d at 411 (emphases added). *Gump II* focused on Wal–Mart's "marketing strategy," which inherently led to a foreseeable risk of danger. See id. In line with this reasoning, the "mode of operation" doctrine has been limited almost entirely to "self-service" and "big box" store slip and·fall cases,[6] as the convenience offered to custom-

---

6. Cf., e.g., Chiara v. Fry's Food Stores of Ariz., Inc., 152 Ariz. 398, 733 P.2d 283 (1987); Rhodes v. El Rancho Markets, 4 Ariz.App. 183, 418 P.2d 613 (1966); Jasko v. F.W. Woolworth Co., 177 Colo. 418, 494 P.2d 839 (1972); Smith v. Safe- way Stores, Inc., 636 P.2d 1310 (Colo.Ct.App. 1981); Jackson v. K–Mart Corp., 251 Kan. 700, 840 P.2d 463 (1992); Gonzales v. Winn–Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Sheehan v. Roche Bros. Supermarkets, Inc., 448 Mass.

ers through their ability to serve themselves, a marketing strategy, is also fraught with the danger of spills causing hazardous floor conditions. *See Gump v. Wal–Mart Stores, Inc.,* 93 Hawai'i 428, 442–43, 5 P.3d 418, 432–33 (App.1999) ("*Gump I*") (" 'While the self-service marketing method has economic advantages for the store owner or business proprietor and permits consumers the freedom to browse, examine, and select merchandise that they desire, certain problems are inherent in the method which are infrequently encountered under traditional merchandising methods that involve individual customer assistance.' " (quoting Donald M. Zupanec, Annotation, *Store or Business Premises Slip–and–Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Condition Allegedly Causing Plaintiff's Fall,* 85 A.L.R.3d 1000, 1004–05 n. 14 (1978))); *id.* at 444, 5 P.3d at 434 (explaining that the mode of operations rule applies " 'when the operating methods of a proprietor are such that dangerous conditions are continuous' " (quoting *Pimentel v. Roundup Co.,* 100 Wash.2d 39, 666 P.2d 888, 892 (1983))).

By contrast, in the present matter, the Respondents had not chosen, as a marketing strategy or a mode of operation, to invite individuals with criminal tendencies onto their premises in order to generate business. In other words, they did not hold out their lack of security as an enticement to potential patrons. Any ostensibly dangerous condition, particularly the possibility of violent individuals attacking patrons outside the club, was simply not traceable to the defendants. *See Gump II,* 93 Hawai'i at 421, 5 P.3d at 411 (observing that the mode of operation rule is "consistent with the exception to the notice requirement where the dangerous condition is traceable to the defen-

dant or its agents"). Consequently, we hold that the ICA did not gravely err when it affirmed the circuit court's decision to refuse to give Moyle's proposed mode of operation jury instruction, because the rule did not apply to the facts of this case.

D. *The ICA Erred In Affirming The Circuit Court's Inclusion Of Tupuola On The Special Verdict Form.*

Moyle next claims that the inclusion of Tupuola on the special verdict form was contrary to Hawai'i precedent and "highly prejudicial" to Moyle, inasmuch as it took the jury's focus away from the issues at hand, namely the Respondents' failure to provide security at the club and to render assistance. Moyle further asserts that, according to *Gump I* and *Gump II,* "although placing nonparties on the special verdict form is a matter within the trial court's discretion, it is an abuse of discretion to do so where the defendant inordinately delays naming the nonparty as an additional party for tactical reasons and assumes the risk of non-inclusion."

*Gump I* and *Gump II* looked to the Uniform Contribution Among Tortfeasors Act (UCATA), HRS §§ 663–11 to 663–17 (1993 & Supp.2003), to determine whether the trial court erred in declining to include McDonald's restaurant, a nonparty joint tortfeasor under HRS § 663–11,[7] on the special verdict form. *See Gump I,* 93 Hawai'i at 446, 5 P.3d at 436; *Gump II,* 93 Hawai'i at 422–23, 5 P.3d at 412–13. The Hawai'i legislature adopted the UCATA for the purpose, *inter alia,* of "abrogat[ing] the common law rule that the release of one joint tortfeasor released all other tortfeasors." *Saranillio v. Silva,* 78 Hawai'i 1, 10, 889 P.2d 685, 694 (1995). HRS § 663–12 [8] provides in relevant

---

780, 863 N.E.2d 1276 (2007); *Sheil v. T.G. & Y. Stores Company,* 781 S.W.2d 778 (Mo.1989); *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513 (1966); *Lingerfelt v. Winn–Dixie Texas, Inc.,* 645 P.2d 485 (Okla.1982); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex. 1983); *Canfield v. Albertsons, Inc.,* 841 P.2d 1224 (Utah App.1992); *Forcier v. Grand Union Stores, Inc.,* 128 Vt. 389, 264 A.2d 796 (1970); *Carlyle v. Safeway Stores, Inc.,* 78 Wash.App. 272, 896 P.2d 750 (1995).

7. HRS § 663–11 defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

8. In full, HRS § 663–12 provides:
 The right of contribution exists among joint tortfeasors.
 A joint tortfeasor is not entitled to a money judgment for contribution until the joint tort-

part that the "relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares, subject to [HRS § ] 663–17." HRS § 663–17(c) dictates that, "[a]s among joint tortfeasors who in a single action are adjudged to be such, the last paragraph of [HRS § ] 663–12 applies only if the issue of proportionate fault is litigated between them by pleading in that action."

*Gump II* applied the aforementioned UCATA provisions in concluding that Wal–Mart, although a joint tortfeasor under HRS § 663–11, had failed to cross-claim (*i.e.,* "plead") against McDonald's and had therefore lost its right of contribution under HRS §§ 663–12 and 663–17. 93 Hawai'i at 422, 5 P.3d at 412. This court further noted that, "under appropriate circumstances that did not exist in the present case, non-parties may be included on a special verdict form." *Id.* Three such "appropriate circumstances" were noted by *Gump II,* involving non-parties that were, respectively, (1) dismissed because their participation would destroy jurisdiction, *see Wheelock v. Sport Kites, Inc.,* 839 F.Supp. 730, 734 (D.Haw.1993), (2) not named because of a bankruptcy stay that was effective throughout the course of the proceedings, *see Kaiu v. Raymark Indus., Inc.,* 960 F.2d 806, 819 n. 7 (9th Cir.1992), or (3) released from the case through settlement, but included on the special verdict pursuant to terms of the release, *see Nobriga v. Raybestos–Manhattan, Inc.,* 67 Haw. 157, 160, 683 P.2d 389, 391 (1984).

The foregoing "appropriate circumstances" constituted exceptions to the explicit "pleading" requirement set forth in HRS § 663–17, either because of the infeasibility of pleading the nonparty into the case (*Wheelock/Kaiu* ), or because the nonparties had agreed to be included on the special verdict (*Nobriga* ). In other words, inclusion was approved in

these cases because "it precluded prejudice to otherwise *vigilant* parties." *Gump I,* 93 Hawai'i 428, 447, 5 P.3d 418, 437 (emphasis added). Wal–Mart, which declined the readily available opportunity to plead in McDonald's through a cross-claim, found itself in none of the three "appropriate circumstances." Accordingly, *Gump II* held that the trial court did not abuse its discretion in leaving McDonald's off the special verdict form. 93 Hawai'i at 423, 5 P.3d at 413.

■ *Gump II's* determination that "[n]on-parties may . . ., in the trial court's sound discretion, . . . be included on a special verdict form," *id.,* begs further elaboration. UCATA, and specifically HRS § 663–17(c)'s unambiguous decree that "the last paragraph of [HRS § ]663–12 applies only if the issue of proportionate fault is litigated between [joint tortfeasors] by pleading in that action," leads to a singular conclusion: although a trial court has "discretion" to include, or to decline to include, a non-party on a special verdict form, it does not, as a matter of law, have the authority to include a non-party who has not been brought into the case by pleading pursuant to HRS §§ 663–12 and 663–17(c). In this regard, the ICA in *Moyle* was incorrect when it surmised that, "[c]onsonant with the reasoning in *Gump I,* the converse of the ICA's holding should also be true: exclusion is not mandated simply because a party has failed to protect its rights." 116 Hawai'i at 402, 173 P.3d at 549. Indeed, as a matter of law, exclusion is mandated when a party fails to protect its rights.

■ The Respondents did attempt to plead Tupuola into the case by filing a third-party complaint against him.[9] As discussed above, however, the circuit court denied leave to file at a hearing on August 1, 2003, during which the court stated:

feasor has by payment discharged the common liability or has paid more than the joint tortfeasor's pro rata share thereof.

A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

When there is such a disproportion of fault among joint tortfeasors as to render inequita-

ble an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares, subject to section 663–17.

9. For reasons unknown, the ICA identified the third-party complaint as a "cross-claim." *See Moyle,* 116 Hawai'i at 402, 173 P.3d at 549.

My inclination is to deny the motion. This case has been pending since September, 2001. So I think it's rather *untimely* with an upcoming trial week four months away. And also I think there's at least a question about what's the main reason. But in addition, there's the question of whether there really is a claim for contribution against Mr. Tupuola in light of the manner in which the complaint was drafted.

(Emphasis added.)

The Respondents' eleventh hour attempt to claim contribution from Tupuola, after declining to do so for two years, was understandably viewed dimly by the circuit court and was well within the circuit court's discretion to deny. The case at hand is distinguishable from the "appropriate circumstances" noted in *Gump II*. The Respondents were not denied the *opportunity* to plead in Tupuola, as were the defendants in *Wheelock* and *Kaiu*, but instead failed to do so when they *had* the opportunity, just as Wal–Mart failed in *Gump II*. Accordingly, we believe that the Respondents failed to litigate the issue of proportionate fault with Tupuola by pleading, and, therefore, under HRS § 663–17(c), the Respondents were barred from having "the relative degrees of fault of the joint tortfeasors ... considered in determining their pro rata shares." HRS § 663–17(c). Because Tupuola could not have been included on the special verdict form as a matter of law, the ICA erred in concluding to the contrary.

Justice Acoba's concurring opinion takes issue with the foregoing analysis and asserts that "HRS §§ 663–12 and 663–17 apply to the issue of contribution, which is manifestly distinct from the issue of apportioning fault among all culpable parties." Concurring opinion at 410–11, 191 P.3d at 1087–88 (footnotes omitted). Justice Acoba's assertion misapprehends the purpose of the UCATA. Apart from superceding the old rule that mandated that the release of one joint tortfeasor released all others, *see Saranillio*, 78 Hawai'i at 10, 889 P.2d at 694, the UCATA was designed to telescope third-party practice claims for contribution into the main action, which increases judicial efficiency by obviating the need for separate actions deter-

mining the apportionment of fault and resultant contribution among joint tortfeasors. HRS § 663–12, and by extension HRS § 663–17, further the goal of settling the issues of apportionment and contribution in tandem. *See Ozaki v. Ass'n of Apartment Owners of Discovery Bay*, 87 Hawai'i 273, 284, 954 P.2d 652, 663 (App.1998) [hereinafter, "*Ozaki I*"] (reciting the Commissioner's Note to UCATA § 4(2), which corresponds to HRS § 663–12, stating that "[UCATA § 4(2)] would permit *apportionment* of pro rata shares of liability of the joint tortfeasors as among themselves." (citing 1939 UCATA, 9 U.L.A. 153, 159 (1951)) (brackets and emphasis added)); *see also Carrozza v. Greenbaum*, 591 Pa. 196, 916 A.2d 553, 566 n. 21 (2007) ("[A]pportionment of liability among joint tortfeasors not only is permissible and familiar ... but indeed it is ultimately necessary in the event of a contribution action brought by one joint tortfeasor against another upon satisfaction of the judgment by the party seeking contribution." (citation omitted)). Justice Acoba's analysis of HRS §§ 663–12 and 663–17's language in a vacuum, concurring opinion at 14–17, fails to take into account the paramount reason for the UCATA's existence. The UCATA was designed to facilitate this very telescoping mechanism for joint tortfeasors who are otherwise severally liable to obtain contribution from one another. If contribution is not possible, the UCATA is simply not implicated. If the UCATA is not implicated, there is no justification for putting joint tortfeasors on the special verdict form, apart from the exceptions noted in *Gump II*.

The facts of the present case demonstrate the wisdom and efficacy of the UCATA's telescoping mechanism, inasmuch as any determination of the proper apportionment of fault with respect to Tupuola, a nonparty, via the special verdict would not collaterally estop Tupuola from litigating the claim in a subsequent action for contribution brought by the Respondents against Tupuola. *See Kaho'ohanohano v. Department of Human Services, State of Hawai'i*, 117 Hawai'i 262, 178 P.3d 538 (2008) (setting forth four requirements for collateral estoppel, including, *inter alia*, that "'the party against whom [collateral estoppel] is asserted was a party or in privity with a party to the prior adjudi-

cation.' " (brackets in original) (quoting *Exotics Hawaii–Kona, Inc. v. E.I. DuPont De Nemours & Co.*, 104 Hawai'i 358, 365, 90 P.3d 250, 257 (2004))).[10]

Justice Nakayama's concurring and dissenting opinion (dissenting opinion) also seems to discount the UCATA's telescoping mechanism. Justice Nakayama maintains that *Montalvo v. Lapez*, 77 Hawai'i 282, 884 P.2d 345 (1994), offers this court guidance regarding the propriety of the circuit court's inclusion of Tupuola on the special verdict form. *Montalvo* involved a plaintiff who was injured by the negligent operation of a City of Honolulu refuse truck driver. *Id.* at 284, 884 P.2d at 347. The plaintiff filed suit for negligence and ultimately received a jury verdict awarding damages. *Id.* One issue raised by the defense on appeal was whether the circuit court unfairly restricted the scope of the jury's deliberation by asking the jury to determine apportionment of fault via a single question on the special verdict form, instead of through separate interrogatories querying the specific amount of damages attributable to injuries prior to the incident, and the amount attributable to the incident itself. *Id.* at 292, 884 P.2d at 355. The *Montalvo* court held the following, upon which Justice Nakayama relies:

> A trial court has "complete discretion" whether to utilize a special or general verdict and to decide on the form of the verdict as well as the interrogatories submitted to the jury "provided that the questions asked are adequate to obtain a jury determination of all factual issues essential to judgment." Although there is "complete discretion" over the type of verdict form, the questions themselves may be so defective that they constitute reversible error.

*Id.* (citations omitted). This statement of the law is correct as a general proposition, but is not absolute. As discussed *supra*, while a trial court possesses "complete discretion" over whether or not to employ a special verdict form, and over the "form" that the

special verdict form will take, such discretion is limited by HRS §§ 663–12 and 663–17 inasmuch as a trial court does not have discretion to include a nonparty on the special verdict form in the absence of "appropriate circumstances." *Gump II*, 93 Hawai'i at 422, 5 P.3d at 412; HRS §§ 663–12 and 663–17.

Justice Nakayama further states that, in the present case, *Montalvo's* framework is more on point than that of *Gump II* because "the appellant in *Montalvo* asserted that the chosen contents of the special verdict form constituted an abuse of discretion by the trial court." Dissenting opinion at 404, 191 P.3d at 1081 (*citing Montalvo*, 77 Hawai'i at 292, 884 P.2d at 355). We disagree and find *Montalvo* to be inapposite. Although *Montalvo* did deal with a special verdict form, that appears to be the extent of the parallel between it and the present case. *Montalvo* involved neither the issue of apportionment of liability nor whether a nonparty, or in *Gump II's* case, a former party, should be included on a special verdict form. *Gump II*, on the other hand, addressed these issues head on. Accordingly, we disagree with Justice Nakayama's reliance on *Montalvo* instead of *Gump II* in the present case.

Justice Nakayama also states that, in light of the parties' arguments, the questions on the special verdict form, and the jury's allocation of responsibility,

> one could infer that the jury concluded that the Respondents were not negligent for their lack of security at the ... Club, and that Tupuola's act was unforeseeable.... One could also infer that the jury concluded that, from a legal causation standpoint, responsibility was more appropriately allocated between Tupuola and Moyle.

Dissenting opinion at 405–06, 191 P.3d at 1082–83. A more likely inference is that the jury found that the Respondents were not negligent due to the erroneous criminal acts instruction, which practically directed the

10. Justice Acoba's assertion that the issue of collateral estoppel is "peripheral to the question at bar," Concurring opinion at 411–12, 191 P.3d at 1088–89 n. 8, misapprehends our stated purpose for raising it, namely, to demonstrate that the present case illustrates the fundamental policy goal furthered by the UCATA, *i.e.*, increasing judicial efficiency by combining the apportionment and contribution actions.

jury to find that Tupuola's acts were unforeseeable because the circumstances were "ordinary," thereby, ostensibly, obviating any duty on the Respondents' part to provide security. *See supra* section III.A.1. Furthermore, and crucially, it was not within the jury's purview to determine that responsibility was "more appropriately allocated" between Tupuola and Moyle, in light of Moyle's decision not to sue Tupuola but, rather, to limit his claim for relief to the Respondents' allegedly negligent omission. An assessment of who the ideal defendant is falls outside a jury's dominion.

In supporting his contention that a nonparty may be placed on the special verdict at the discretion of the circuit court, Justice Acoba cites *Doe Parents No. 1 v. State of Hawai'i*, 100 Hawai'i 34, 58 P.3d 545 (2002), and *Ozaki v. Ass'n of Apartment Owners of Discovery Bay*, 87 Hawai'i 265, 954 P.2d 644 (1998) [hereinafter, *Ozaki II*]. A brief review of each will demonstrate that they are inapposite to the present case.

*Doe Parents No. 1* involved a lawsuit brought by two elementary school students and their parents (collectively, "the plaintiffs") against the Department of Education (DOE) stemming from the students' alleged sexual assault at the hands of their teacher, Norton. *Id.* at 41, 52, 58 P.3d at 552, 563. Although Norton was originally named in the complaint as a codefendant, and was subsequently named in a cross-claim by the DOE, he was ultimately dismissed from the case due to an apparent discharge of his debts following a voluntary bankruptcy petition. *Id.* at 56 n. 30, 58 P.3d at 567 n. 30. The circuit court ultimately determined that the DOE's degree of fault in causing the plaintiffs' injuries was forty-nine percent. *Id.* at 57, 58 P.3d at 568.

As Justice Acoba notes, concurring opinion at 413, 191 P.3d at 1090 n. 10, *Doe Parents No. 1* dealt largely with HRS § 663–10.5 (2001),[11] which altered the common law rule of joint and several liability among joint tortfeasors with respect to government entities.[12]

The analysis set forth in *Doe Parents No. 1*, and in particular this court's conclusion that the statute's retroactivity provision did not ultimately shield the DOE from liability, are neither here nor there with respect to the issues confronting us in the present matter. Instead of dealing with the general contours of joint and several liability as provided by the UCATA, *Doe Parents No. 1* focused on an exception to the UCATA for government entities. Justice Acoba emphasizes this court's statement, in *dictum*, that if the DOE had been found liable under the plaintiffs' theory of *respondeat superior*, it would have been necessary to apportion liability among both the DOE and Norton, who was dismissed from the case. Concurring opinion at 413, 191 P.3d at 1090. Justice Acoba is apparently undertaking to demonstrate an inconsistency with our present holding that, as a matter of law and pursuant to HRS §§ 663–12 and 663–17, a nonparty not pleaded into the case cannot be placed on the special verdict absent the appropriate circumstances set out in *Gump II*.

There is, however, no such inconsistency. First, Norton, as required by HRS § 663–17(c), had been pleaded into the case via the plaintiffs' complaint. *Doe Parents No. 1*, 100 Hawai'i at 41, 58 P.3d at 563. Furthermore, Norton's discharge of debt through bankruptcy proceedings is akin to the nonparty in *Kaiu*, who was not named as a party due to a bankruptcy stay. 960 F.2d at 819 n. 7. Accordingly, *Doe Parents No. 1* is completely compatible with our analysis in the present matter.

Justice Acoba's reliance on *Ozaki II*, 87 Hawai'i 265, 954 P.2d 644, a case involving a woman who was murdered in her condominium by her estranged boyfriend, is equally confounding. Justice Acoba first notes that, "[d]espite [the estranged boyfriend's] absence from the proceedings, he was included on the special verdict form." Concurring opinion at 413, 191 P.3d at 1091. This is unremarkable, inasmuch as the estranged

---

11. HRS § 663–10.5 was amended in 2006 in respects not pertinent here.

12. HRS § 663–10.5 provides in relevant part that "in any case where a government entity is determined to be a tortfeasor along with one or more other tortfeasors, the government entity shall be liable for no more than that percentage share of the damages attributable to the government entity."

boyfriend, like Norton in *Doe Parents No. 1*, was a party to the case, having been named as a defendant in the complaint by the plaintiffs. Moreover, the crux of *Ozaki II* was whether HRS § 663–31, which deals with comparative negligence, barred the plaintiffs' recovery from a defendant whose percent of fault was *less* than that of the victim. Given the immateriality of Tupuola's degree of responsibility for the plaintiff's injuries, HRS § 663–31 is tangential to the issue posed on appeal in the present case.

We must also address the following language of the concurrence:

> Not only is the inclusion of the non-party joint (intentional) tortfeasors consistent with precedent, it also comports with underlying judicial policies. Allowing the finder of fact to consider the role of a nonparty joint tortfeasor serves the truth-finding function of the litigation process. In that connection, precluding the fact-finder from considering a non-party joint tortfeasor's actions could obscure the truth of which entities contributed to the plaintiff's injuries and to what degree.

Concurring opinion at 409, 191 P.3d at 1086. The relevance of the foregoing statement is a mystery to us, inasmuch as we have nowhere suggested that evidence of Tupuola's conduct could not be presented to the jury, and such evidence was clearly and correctly offered in the circuit court. Tupuola's conduct was obviously relevant to the plaintiff's claim that the Respondents breached a duty to provide security. Omitting Tupuola's name from the special verdict, as required by law, would not have impeded the jury from its fact-finding objective. Moreover, if the Respondents were concerned that, somehow, Tupuola's absence from the special verdict would obscure the truth as to where the blame properly lay for the plaintiff's injuries, they had ample

opportunity to timely plead Tupuola into the matter.

This misunderstanding also infects Justice Acoba's observation that the *Ozaki II* court "did not intimate that [the estranged boyfriend's] role in causing the plaintiffs' injuries should not have been considered in determining the relative fault of the parties." Concurring opinion at 414–15, 191 P.3d at 1091–92. While a fact-finder, where relevant, can certainly take into account the "role" of a nonparty in determining the liability of parties to an action, it does not follow that the nonparty should be included on the special verdict.

E. *The ICA Did Not Err When It Held That The Circuit Court Did Not Abuse Its Discretion In Denying Moyle's Motion For A New Trial.*

Finally, Moyle argues that the ICA erred in affirming the circuit court's denial of his motion for a new trial "after clear and convincing relevant and material evidence was found, proving that [the Respondents'] trial representatives had lied about who actually owned the club" at the time of Moyle's injury.[13]

Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) states in relevant part:

> (b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

 A circuit court's denial of a HRCP Rule 60(b) is reviewed for abuse of discretion. *Beneficial Hawaii, Inc. v. Casey*, 98 Hawai'i 159, 164, 45 P.3d 359, 364 (2002).

---

13. The March 15, 2004 motion filed with the circuit court was entitled "[Hawai'i Rules of Civil Procedure (HRCP)] Rule 59(a), Rule 59(e), and Rule 60(b)(3) Motion to Set Aside Jury Verdict and Judgment Entered on March 5, 2004, and for a New Trial, and for Sanctions, Based Upon Defendants' Fraud Upon the Court and Erroneous Jury Instructions and Prejudicial Verdict Form." In reviewing the motion, the ICA determined that, "[w]hile the title of the motion appears to implicate at least three grounds, [Moyle] only reasserts one on appeal, namely that Appellees and their representatives committed perjury and fraud on the court while giving testimony on a material factual issue: who owned the club at the time the incident occurred." *Moyle*, 116 Hawai'i at 402, 173 P.3d at 549. Moyle's application for a writ of certiorari also raises only the issue of the Respondents' perjury and fraud, and therefore I will only address that issue.

The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Id.*

Moyle points to this court's holding that "[f]raud, misrepresentation, and circumvention used to obtain a judgment are generally regarded as sufficient cause for the opening or vacating of the judgment." *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 257, 948 P.2d 1055, 1098 (1997) (citation and quotation marks omitted); *see also Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 158, 73 P.3d 687, 696 (2003) ("[T]he relief available under HRCP rules 60(b) and 60(b)(3) reflect the preference for judgments on the merits over the finality of judgments, especially when such judgments are procured through fraud.").

 Nevertheless, even assuming that the Respondents somehow misrepresented who owned the club at the time of the incident, the ICA correctly held that Moyle "has not shown how ownership of the [club], by either Y & Y Hyup Shin, Corp. or TTJJKK, Inc., affected the outcome of this case." *Moyle*, 116 Hawai'i at 403, 173 P.3d at 550. The United States Court of Appeals for the Fourth Circuit, in analyzing Federal Rules of Civil Procedure (FRCP) Rule 60(b),[14] construed fraud as that which " 'seriously' affects the integrity of the normal process of adjudication," *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 130 (4th Cir.2000) (citing 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.21[4][a] (3d ed.1999)), and cited as examples of such serious conduct "bribing a judge, . . . tampering with a jury, or fraud by an officer of the court, including an attorney." *Id.* The misrepresentation Moyle claims the Respondents engaged in does not appear to rise to the level of fraud under HRCP Rule 60(b)(3). Accordingly, the ICA did not err in determining that the circuit court did not commit an abuse of discretion in denying Moyle's HRCP Rule 60(b) motion.

**14.** FRCP Rule 60(b) and HRCP 60(b) are identical. When a Hawai'i rule of procedure is modeled after a federal rule, "the interpretation of [the rule] by the federal courts [is] deemed to be

## IV. *CONCLUSION*

For the foregoing reasons, we vacate the circuit court's March 5, 2004 judgment and the ICA's November 23, 2007 judgment, and we remand this matter to the circuit court for further proceedings consistent with this opinion.

## CONCURRING AND DISSENTING OPINION BY NAKAYAMA, J.

I concur with the majority's conclusion that the circuit court's jury instruction regarding foreseeability of third-party criminal acts was prejudicially erroneous. *See* Majority opinion at 391–93, 191 P.3d at 1068–70. However, I respectfully dissent from the majority's holding that the Intermediate Court of Appeals (ICA) erred by affirming the circuit court's decision to include interrogatories pertaining to Tupuola in the special verdict form. *See* Majority opinion at 397–402, 191 P.3d at 1074–79. In my view, under the facts of this case and our prior case law, I cannot say that the circuit court's decision to include interrogatories pertaining to Tupuola in the special verdict form constitutes an abuse of discretion. Further, contrary to the majority's conclusion, I believe that the ICA did not err in its interpretation of *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 417, 5 P.3d 407 (2000) ("*Gump II*").

This court has long held that "[t]he trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008) (block format and citation omitted). In other words, "an abuse of discretion occurs when the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.* (block format and citation omitted). Expounding further,

"[d]iscretion" denotes the absence of a hard and fast rule. . . . When invoked as a

highly persuasive in the reasoning of this court." *Harada v. Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380 (1968).

guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.

*Booker v. Midpac Lumber Co., Ltd.*, 65 Haw. 166, 172, 649 P.2d 376, 380 (1982) (quoting *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). Moreover, "the determination of the existence of clear abuse is a matter which is not free from difficulty and each case in which abuse is claimed must be adjudged according to its peculiar circumstances." *State v. Sacoco*, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961). "The burden of establishing abuse of discretion is on appellant, ... and a strong showing is required to establish it." *State v. Estencion*, 63 Haw. 264, 267, 625 P.2d 1040, 1043 (1981).

As it relates to verdict forms, this court has said that

[a] trial court has "complete discretion" whether to utilize a special or general verdict and to decide on the form of the verdict as well as the interrogatories submitted to the jury "provided that the questions asked are adequate to obtain a jury determination of all factual issues essential to the judgment." ... Although there is "complete discretion" over the type of verdict form, the questions themselves may be so defective that they constitute reversible error.

*Montalvo v. Lapez*, 77 Hawai'i 282, 292, 884 P.2d 345, 355 (1994) (citations omitted).

Moyle relies solely on *Gump II* to assert that the circuit court abused its discretion by including interrogatories pertaining to Tupuola in the special verdict form. To the extent that *Gump II* applies to this case, I believe that Moyle's assertion is without merit because this court has clearly held that "[n]on-parties may be considered joint tortfeasors under the UCATA and, in the trial court's sound discretion, may be included on a special verdict form." *Id.* at 422, 5 P.3d at 412. Because it is undisputed that Tupuola inflicted Moyle's injuries, Moyle "could have recovered damages in a direct action against [Tupuola], had [Moyle] chosen to pursue such

an action." *Id.* (quotation marks and citation omitted). Accordingly, I respectfully disagree with the majority's conclusion that the ICA erred in its interpretation of *Gump II*.

Notwithstanding Moyle's reliance on *Gump II*, and the majority's reliance on the explicit statutory relationship between HRS §§ 663–17(c) and 663–12 (1993), I believe that *Montalvo's* framework is more appropriate for disposing of this issue because, similar to Moyle, the appellant in *Montalvo* asserted that the chosen contents of the special verdict form constituted an abuse of discretion by the trial court. *See* 77 Hawai'i at 292, 884 P.2d at 355 ("The City also contends that the trial court unfairly restricted the scope of the jury's deliberation by allowing the submission of a single question on the special verdict form."). In contrast, the issue in *Gump II* was whether the trial court abused its discretion by leaving a non-party off of a special verdict form. 93 Hawai'i at 422, 5 P.3d at 412.

This court has said that the concept of "'[d]iscretion' denotes the absence of a hard and fast rule," *Booker*, 65 Haw. at 172, 649 P.2d at 380, and, as such, each case where an abuse of discretion is claimed "must be adjudged according to its peculiar circumstances." *Sacoco*, 45 Haw. at 292, 367 P.2d at 13. Moyle is essentially arguing that the circuit court's decision to include a few interrogatories pertaining to Tupuola in the special verdict form was "highly prejudicial" to Moyle because it confused the jury on the relevant issues. Thus, the pertinent inquiry is whether those interrogatories are "adequate to obtain a jury determination of all factual issues essential to the judgment." *See Montalvo*, 77 Hawai'i at 292, 884 P.2d at 355. Accordingly, I believe that *Montalvo* provides the relevant analytical framework for this issue, and, consequently, Moyle's reliance on *Gump II* is misplaced.

Addressing the merits of Moyle's argument in light of *Montalvo*, I believe that any prejudice flowing from the inclusion of interrogatories pertaining to Tupuola in the special verdict form is, at best, unclear, inasmuch as (1) it is an undisputed fact between the parties that Tupuola inflicted Moyle's injuries, and (2) legal causation is a primary

issue in this case. This court has held that an

> actor's negligent conduct is a legal cause of harm to another if (a) his or her conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his or her negligence has resulted in the harm. The first prong of the test for the presence of legal causation contemplates a factual determination that the negligence of the defendant was more likely than not a substantial factor in bringing about the result complained of.

*Doe Parents No. 1 v. State of Hawai'i, Dept. of Educ.*, 100 Hawai'i 34, 85, 58 P.3d 545, 596 (2002). Relatedly, "[f]oreseeability ... in the context of breach of duty and causation is a question of fact for the trier of fact to resolve." *Pulawa v. GTE Hawaiian Tel*, 112 Hawai'i 3, 13, 143 P.3d 1205, 1215 (2006). In my view, the boundaries of legal causation in this case would be unfairly misrepresented to the jury had the circuit court left the disputed interrogatories off of the special verdict form.

To reiterate, it is undisputed between the parties that Tupuola inflicted Moyle's injuries. During closing arguments, Moyle's counsel argued to the jury that based on the evidence presented at trial, the Do Re Mi Club "was a place that made money by drawing people in who like to drink." As such, Moyle's counsel urged the jury to determine whether or not the nature and history of the Do Re Mi Club "created a condition where what happened to Mr. Moyle was foreseeable." In so arguing, Moyle's counsel repeatedly pointed out to the jury that he was "not suing [Tupuola] for the injury he did[.]" Rather, Moyle's counsel argued that "[t]he injury here ... is not having provided security. Security cannot stop everything ·bad from happening, but it can deter assaults, it can keep people out of situations they may not go where the security is." Therefore, Moyle was "suing [the Respondents] for negligence in not having adequate security, and that this was foreseeable."

In this case, it is unclear whether the questions included in the special verdict form are "so defective that they constitute reversible error." *Montalvo*, 77 Hawai'i at 292, 884 P.2d at 355. On August 1, 2003, the circuit court denied Respondents' motion for leave to file a third-party complaint against Tupuola. Nonetheless, the circuit court included interrogatories pertaining to Tupuola on the special verdict form,[1] which Moyle objected to. Question numbers 1 and 3 of the special verdict form asked the jury whether each of the Respondents were "negligent on September 19, 1999[.]" For both of these questions, the jury answered, "no."

Question number 5 asked the following question: "Was plaintiff Richard Moyle negligent on September 19, 1999?" As a follow-up question, question number 6 asked, "Was plaintiff Richard Moyle's negligence a substantial factor in bringing about his damages?" For both of these questions, the jury answered, "yes."

Question number 7 asked, "Was Simi Tupuola's criminal act a substantial factor in bringing about plaintiff's damages?" For this question, the jury also answered, "yes." Ultimately, the jury allocated responsibility in the following manner: (1) zero percent responsibility for each of the Respondents; (2) five percent responsibility for Moyle; and (3) ninety-five percent responsibility for Tupuola.

In light of the arguments made, the questions asked on the special verdict form, and the manner in which the jury allocated responsibility, one could infer that the jury concluded that the Respondents were not negligent for their lack of security at the Do Re Mi Club, and that Tupuola's act was unforeseeable. *See Doe Parents No. 1*, 100 Hawai'i at 85, 58 P.3d at 596; *see also Pulawa*, 112 Hawai'i at 13, 143 P.3d at 1215. One could also infer that the jury concluded that, from a legal causation standpoint, responsibility was more appropriately allocated between Tupuola and Moyle. *See Doe Parents No. 1*, 100 Hawai'i at 85, 58 P.3d at 596; *see*

---

1. I note that the record is silent as to the reasons behind the circuit court's decision to include

Tupuola in the special verdict form.

*also Pulawa,* 112 Hawai'i at 13, 143 P.3d at 1215.

For these reasons, I believe that Moyle has failed to carry his burden of a "strong showing" necessary to establish an abuse of discretion, *see Estencion,* 63 Haw. at 267, 625 P.2d at 1043, inasmuch as the interrogatories posed by the circuit court's special verdict form are "adequate to obtain a jury determination of all factual issues essential to the judgment." *See Montalvo,* 77 Hawai'i at 292, 884 P.2d at 355 (citation and quotation marks omitted); *Booker,* 65 Haw. at 172, 649 P.2d at 380. Accordingly, I would hold that the ICA did not err by affirming the circuit court's decision to include interrogatories pertaining to Tupuola in the special verdict form.

## CONCURRING OPINION BY ACOBA, J.

I agree that the judgment in this case should be vacated and the case remanded for a new trial, but on the bases that follow. In my view, (1) Simi Tupuola (Tupuola) should not have been included on the special verdict form because the Circuit Court of the First Circuit (the court) had previously denied making Tupuola a third party defendant, and Petitioner/Plaintiff–Appellant Roger Scott Moyle (Petitioner) foreseeably relied on the court's ruling in presenting his case; (2) under our precedent, Tupuola should be excluded because the court abused its discretion based on the circumstances of this case and not, as the majority asserts, because it is required as a matter of law, (3) the jury's determination that Respondents/Defendants–Appellees Y & Y Hyup Shin, Corp. and TTJJKK Inc., both d/b/a/ Do Re Mi Karaoke (collectively, Respondents) were not liable for Petitioner's injuries was premised on faulty jury instructions regarding the criminal acts of third parties and dram shop liability. Because of these errors, Petitioner is entitled to a new trial.

### I.

As to point (1), I concur with the majority's ultimate conclusion that "[t]he [Intermediate Court of Appeals (ICA)] erred in affirming the [court's] inclusion of Tupuola on the special verdict form." Majority opinion

at 397, 191 P.3d at 1074 (formatting altered). However, I would hold that under the specific facts of this case, it was highly prejudicial to introduce the issue of Tupuola's culpability so late in the proceedings, and thus, the court abused its discretion by including him on the special verdict form.

When it denied Respondents' motion for leave to file a third-party action against Tupuola, the court expressed doubt that Tupuola's actions were relevant to Petitioner's theory of liability. The court stated that it was denying the motion for leave to file a third-party complaint because, in part, "there's the question of whether there really is a claim against [Tupuola] in light of the manner in which the complaint was drafted." Accordingly, Petitioner prepared and presented his case on the assumption that Tupuola's intentional conduct had been deemed unrelated to the issue of "whether [Respondents] were liable for not having provided any security at the [c]lub and/or for not having rendered assistance after the mugging." (Citation omitted.)

In that connection, according to Petitioner's assertions at oral argument, the jury learned about Tupuola's conduct, but it was made clear that Tupuola was not part of the case before the jury. *Cf. Swietlowich v. Bucks County,* 610 F.2d 1157, 1164 (3d Cir. 1979) (explaining that a trial judge who "decides to change ... an earlier ruling ... must also take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling" and finding that "the plaintiff suffered no prejudice at trial ... since she was fully prepared to meet the limitations defense"); *Barcai v. Betwee,* 98 Hawai'i 470, 488, 50 P.3d 946, 964 (2002) (Acoba, J., concurring, joined by Ramil, J.) (arguing that "[i]f, after trial has begun, a ruling made pretrial is modified or reversed, the trial court must adopt such measures as will mitigate any resulting prejudice"); *Roxas v. Marcos,* 89 Hawai'i 91, 124, 124 n. 19, 969 P.2d 1209, 1242, 1242 n. 19 (1998) (rejecting the appellants' argument that her stipulation to be substituted for deceased party was ineffective because the stipulation had been accepted by the trial court and relied upon by the appellees); *State v. Dowsett,* 10 Haw.

App. 491, 495, 878 P.2d 739, 742 (1994) ("We hold, therefore, that before the court orders dismissal of a case because of the State's violation of [Hawai'i Rules of Penal Procedure] Rule 16, it must consider whether less severe measures would rectify prejudice caused to the defendant by the violation."), *overruled on other grounds by State v. Rogan*, 91 Hawai'i 405, 423, n. 10, 984 P.2d 1231, 1249 n. 10 (1999); *Marshall v. Osborn*, 213 Ill.App.3d 134, 156 Ill.Dec. 708, 571 N.E.2d 492, 496 (1991) (finding no abuse of discretion where the trial court reversed its original in limine ruling in part because "the trial court made a conscientious effort to minimize any surprise or potential prejudice by offering to rule before plaintiffs presented their case and by offering them the opportunity to reopen their case after the ruling [reversing the original determination])". Given the court's previous refusal to allow the third party claim against Tupuola and Petitioner's reliance thereon, it was an abuse of discretion to thereafter include Tupuola on the special verdict form over Petitioner's objection.

## II.

Although I conclude that the court abused its discretion in including Tupuola on the special verdict form, with respect to point (2) I respectfully disagree that he had to be excluded *as a matter of law*, as the majority holds. *See* majority opinion at 398, 191 P.3d at 1075 (holding that "as a matter of law, exclusion is mandated when a party fails" to interplead a potentially liable party). It must be emphasized that contrary to the foregoing statement by the majority, "[t]his court has held that a court in its discretion may treat a non-party to the suit as a party for purposes of apportioning damages." *Doe Parents No. 1 v. State of Hawai'i*, 100 Hawai'i 34, 96, 58 P.3d 545, 607 (2002) (Acoba, J., concurring) (citing *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 417, 423, 5 P.3d 407, 413 (2000) [hereinafter "*Gump II*"]); *see also Gump II*, 93 Hawai'i at 422, 5 P.3d at 412 (explaining that including nonparty joint tortfeasors on a special verdict from is "in the trial court's *sound discretion*" (emphasis added)). Hence, the majority's interpretation of the *Gump* cases as requiring a cross-

claim as a prerequisite to apportionment is in direct contravention of the express language of *Gump II*.

## III.

### A.

The *Gump* cases arose from an incident in which the plaintiff, Linda Gump (Gump), slipped and fell on a McDonald's french fry while exiting a Wal–Mart store. *Gump v. Walmart Stores, Inc.*, 93 Hawai'i 428, 433, 5 P.3d 418, 423 (App.1999) [hereinafter, "*Gump I*"]. Gump filed suit against both McDonald's and Wal–Mart, alleging negligence and recklessness. *Id.* Prior to trial, Gump and McDonald's settled, and Gump requested that McDonald's be dismissed. *Id.* at 434, 5 P.3d at 424. On the second day of trial, the circuit court granted the motion and also "limited the introduction of evidence relating to McDonald's." *Id.*

The jury was provided a special verdict form which required it to determine only the relative liability of Gump and Walmart. *See id.* Notably, the special verdict form did not permit the jury to consider McDonald's as a potentially liable party. *See id.* The jury determined that Gump was 5% at fault and Wal–Mart was 95% at fault for Gump's injuries. *Id.*

### B.

On appeal to the ICA, Wal–Mart contended, *inter alia*, that the circuit court "erred, as a matter of law, in dismissing settling codefendant McDonald's from the action, excluding evidence of McDonald's' negligence at trial, and *preventing apportionment of McDonald's' fault in the special verdict form.*" *Id.* at 435, 5 P.3d at 425 (emphasis added). The ICA reiterated that the Uniform Contribution Among Tortfeasors Act (UCATA) defined joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, *whether or not judgment has been recovered against all or some of them.*" *Id.* at 446, 5 P.3d at 436 (quoting Hawai'i Revised Statutes (HRS) § 663–11 (1993)) (emphasis added) (internal quotation marks omitted).

It concluded that "[i]mplicit in these definitions is the notion that *party status is not a prerequisite to joint tortfeasor status.*" *Id.* (emphasis added).

The ICA held that joint tortfeasors wishing to demand contribution from each other must litigate "the issue of proportionate fault" among themselves "by pleading in that action." *Id.* at 447, 5 P.3d at 437 (quoting HRS § 663–17(c)) (emphasis omitted). Thus, because Wal–Mart had failed to cross-claim against McDonald's, it had "failed to invoke its statutory right to contribution under the UCATA." *Id.* The ICA went on to explain that the trial courts have discretion to include non-parties on special verdict forms, but no obligation to do so. *Id.* (explaining that "whether the court takes such action [apportioning fault to a non-party joint tortfeasor] is a decision within the discretion, not the obligation, of the court"). It noted several cases in which the courts had exercised that discretion.[1] The ICA distinguished those cases because they did not involve defendants that had "simply failed to assert [their] right to contribution." *Id.*

### C.

On certiorari, in *Gump II,* this court affirmed the ICA's holding that because Wal–Mart had not filed a cross-claim for contribution against McDonald's, the circuit court did not err in excluding McDonald's from the special verdict form. 93 Hawai'i at 422, 5 P.3d at 412. This court also affirmed the ICA's holding that, "*under appropriate circumstances[,] ... non-parties may be included on a special verdict form.*" *Id.* (emphasis added). As to the liability of non-parties, this court reiterated that "*[n]on-parties may be considered joint tortfeasors under the UCATA[.]*" *Id.* (emphasis added). Specifically, this court said, "A party is liable

within the meaning of [HRS § ]663–11 *if the injured person could have recovered damages in a direct action against that party, had the injured person chosen to pursue such an action.*" *Id.* (emphasis added) (internal quotation marks and citations omitted). Elaborating on the "appropriate circumstances" for including non-party joint tortfeasors on special verdict forms, this court pointed to (1) the bankruptcy stay in *Kaiu,* (2) the dismissal to preserve diversity jurisdiction in *Wheelock,* and (3) the acquiescence of the settling defendants in *Nobriga v. Raybestos–Manhattan, Inc.,* 67 Haw. 157, 683 P.2d 389 (1984). *Id.* at 422–23, 5 P.3d at 412–13. However, nowhere did this court indicate that the foregoing were the *only* circumstances in which it would be appropriate to include a non-party defendant on a special verdict form.

### IV.

In this case, as stated in *Gump II,* the filing of a cross claim is *not a condition precedent* to apportionment. *See id.* at 422, 5 P.3d at 412. Although Tupuola was not named as a party to this action, it is not disputed that had Petitioner brought suit against Tupuola, Petitioner could have recovered damages from him. *See Troyer v. Adams,* 102 Hawai'i 399, 402 n. 1, 77 P.3d 83, 86 n. 1 (2003) (holding that, in defining joint tortfeasors, "the basis of liability is not relevant, nor is the relationship among those liable for the tort" but rather, "*[t]he point is that both tortfeasors are (at least) severally liable for the same injury to the plaintiff*" (emphasis added) (citations, internal quotation marks, and brackets omitted)); *Gump I,* 93 Hawai'i at 446, 5 P.3d at 436 (holding that "party status is not a prerequisite to joint tortfeasor status").[2] Thus, Tupuola was a

---

1. In *Kaiu v. Raymark Indus., Inc.,* 960 F.2d 806, 819 n. 7 (9th Cir.1992), the nonparty defendant was insulated from judgment by a stay imposed by a bankruptcy court. In *Wheelock v. Sport Kites, Inc.,* 839 F.Supp. 730, 734 (D.Haw.1993), the plaintiff had dismissed the included nonparty to preserve diversity jurisdiction. The ICA determined that *Kaiu* and *Wheelock* did not *mandate* that nonparty joint tortfeasors be included on special verdict forms. *See Gump I,* 93 Hawai'i at 447, 5 P.3d at 437. That court reasoned that the

*Kaiu* and *Wheelock* courts had exercised their discretion to do so because "[i]nclusion in both cases ... *precluded prejudice to otherwise vigilant parties.*" *Id.* (emphasis added).

2. Insofar as the majority interprets statutes relating explicitly to joint tortfeasors, *see* majority opinion at 397–99, 191 P.3d at 1074–76, it appears that the majority also concludes that Tupuola and Respondents were joint tortfeasors.

potential joint tortfeasor with Respondents, and including him on the special verdict form was a matter within the court's discretion.

The contrary rule adopted by the majority, that the court was required, *as a matter of law,* to exclude Tupuola from the verdict form because he was not named as a party in the pleadings, would unnecessarily deprive the trial courts of their discretion in dealing with varied factual circumstances. In this case, Petitioner chose not to name Tupuola in his civil suit. Additionally, Respondents delayed filing a third-party complaint against Tupuola for approximately two years. The court declined to make Tupuola a party after such a prolonged delay, in part because Tupuola's actions were unrelated to Petitioner's theory of liability against Respondents, but then reversed itself by placing Tupuola on the verdict form. Based on these facts, I would hold that the court abused its discretion because, as discussed *supra,* the reversal of its earlier position unfairly prejudiced Petitioner.

V.

A.

As noted, in *Gump II,* this court listed circumstances in which it would be appropriate to include a nonparty on a jury verdict form. The majority concludes that these circumstances were adopted as "exceptions" to the so-called "pleading requirement set forth in HRS § 663–17 [3] either because of the infeasibility of pleading the nonparty into the case," majority opinion at 398, 191 P.3d at 1075 (citing *Wheelock,* 839 F.Supp. at 734 (plaintiff dismissed defendant to preserve diversity jurisdiction); *Kaiu,* 960 F.2d at 819 n. 7 (nonparty defendant was insulated from judgment by a stay imposed by a bankruptcy court)), or "because the nonparties had agreed to be included on the special verdict [form,]" *id.* at 398, 191 P.3d at 1075 (citing *Nobriga,* 67 Haw. 157, 683 P.2d 389 (settling defendants were included on the special ver-

dict form pursuant to the terms of their releases)). Thus, except for these three "exceptions," Petitioner and the majority essentially treat interpleading the joint tortfeasor as a "condition precedent" to apportionment, a position that was expressly rejected in *Gump II* by this court. *See* 93 Hawai'i at 422, 5 P.3d at 412.

Nothing in *Gump II* indicates that the foregoing circumstances are to be treated as an exhaustive list of situations under which a non-party may be included on a special verdict. In fact, where the non-party joint tortfeasor committed an intentional tort and, therefore, would likely be apportioned a substantially greater percentage of fault than a negligent joint tortfeasor but is not amenable to judgment, the court could, within its discretion, include the intentional tortfeasor on the special verdict form. *See, e.g., Doe Parents No. 1,* 100 Hawai'i at 87, 58 P.3d at 598 (explaining, in *dictum,* that, if the negligent tortfeasor had been found liable for the conduct of the intentional tortfeasor under the theory of *respondeat superior,* liability would have to be apportioned, even though the intentional tortfeasor was judgment-proof); *Ozaki v. Ass'n of Apartment Owners of Discovery Bay,* 87 Hawai'i 273, 278, 954 P.2d 652, 657 (App.1998) [hereinafter, "*Ozaki I* "] (noting that the intentional tortfeasor was included on the special verdict form even though plaintiffs had received a default judgment against him).

Not only is the inclusion of non-party joint (intentional) tortfeasors consistent with precedent, it also comports with underlying judicial policies. Allowing the finder of fact to consider the role of a nonparty joint tortfeasor serves the truth-finding function of the litigation process. In that connection, precluding the fact-finder from considering a non-party joint tortfeasor's actions could obscure the truth of which entities contributed to the plaintiff's injuries and to what degree.[4] Thus, exclusion of a nonparty joint tortfeasor

3. HRS § 663–17 is quoted *infra* at note 7.

4. The majority claims the discussion of these policy considerations is a "mystery" to it. *See* majority opinion at 402, 191 P.3d at 1079. However, what is mystifying is the majority's aban-

donment of the express grant of discretion to trial courts this court so recently made in *Gump II.* The concern with the integrity of the truth-finding mission of litigation is no less relevant than the policy of promoting judicial efficiency, which the majority discusses at length. The im-

410

*effectively denies the finder of fact the opportunity to determine legal causation—that is, to determine which party's act or omission was a substantial fact in causing the plaintiff's injuries,* a crucial element in determining liability in any tort cause of action. This is also crucial in the fairness of a system of civil fault.... *By allowing the "empty chair" argument during the [remaining] joint tortfeasor's trial, the court will facilitate the determination of causal negligence,* not liability, *and enable the trier of fact to decide the degree of each actor's negligence or other fault.* This way, the "empty chair" argument lessens the likelihood of prejudice to the [remaining] tortfeasor[.]

Marion L. Reyes–Burke, Recent Development, *Keeping the (Good) Faith: Hawai'i's [sic] Good Faith Settlement After HRS Section [663–]15.5 and Troyer v. Adams,* 26 U. Haw. L.Rev. 275, 304–05 (Winter 2003) (emphases added) (footnotes and some internal quotation marks omitted). Given the importance of the fact-finding function, leeway must be given the trial courts to formulate appropriate special verdict forms.[5]

Related to this point, the majority maintains that (1) excluding Tupuola from the special verdict form "would not have impeded the jury from its fact-finding objective[,]" and (2) "if the *Respondents* were concerned that, somehow, Tupuola's absence ... would obscure the truth as to where the blame properly lay for [Petitioner's] injuries," their remedy was to properly plead him into the action. Majority opinion at 402, 191 P.3d at 1079 (emphasis added). Respectfully, these are straw arguments apparently intended to bolster the majority's position, and are not responsive to this opinion.

As to the first point, it is not disputed that, under the facts of this case, Tupuola's exclusion would not have prevented the jury from determining whether Respondents were negligent in failing to provide security or in failing to assist Petitioner. In fact, the majority simply ignores the statement herein that Tupuola's exclusion was necessary under the particular facts of this case, especially the court's prior ruling that Tupuola's actions were irrelevant to Petitioner's theory of liability. *See supra* at 391, 191 P.3d at 1068. The critical consideration is that, under different circumstances, the exclusion of a nonparty joint tortfeasor might impede the truth-finding function, and therefore, the inflexible rule crafted by the majority in this case is inappropriate.

As to the second point, the majority's criticism simply misstates the issue. It is evident that, pursuant to the *Gump* cases, the Respondents could have guaranteed Tupuola's presence by interpleading him. However, *Respondents* are not appealing a decision to exclude Tupuola on the grounds that it somehow prejudiced a verdict against them. To the contrary, it is *Petitioner* who contends that including Tupuola on the special verdict form obscured the issue of whether Respondents were negligent in failing to provide adequate security and in failing to render aid when he was assaulted.

Petitioner attempted to avoid that confusion by (1) excluding Tupuola as a defendant in his complaint, and (2) objecting to Tupuola's inclusion on the special verdict form. Thus, Petitioner, unlike Wal–Mart in *Gump* and Respondents herein, took steps to protect his position. Based on the foregoing, the "misunderstanding" which the majority claims "infects" the analysis of *Doe Parents*

portance of allowing the fact-finder to consider relevant information in reaching a verdict underscores the necessity of allowing trial courts broad discretion in determining the content of special verdict forms. Restricting that discretion, as the majority does here, directly contravenes this court's precedent in *Gump II* and the judicial policies discussed above.

5. In this connection, the majority objects to the conclusion that excluding Tupuola from the verdict form as a matter of law could obscure the

truth-finding mission of the jury. *See* majority opinion at 402, 191 P.3d at 1079 ("While a fact-finder, where relevant, can certainly take into account the 'role' of a nonparty in determining the liability of parties to an action, it does not follow that the nonparty should be included on the special verdict.") The point, of course, is that the question of whether the nonparty should be placed on the verdict forms is factually-laden, and appropriate discretion therefore must be afforded the trial judge, a proposition the majority apparently eschews.

*No. 1* and *Ozaki, see* majority opinion at 402, 191 P.3d at 1079, is of its own creation.

## B.

### 1.

As to this point, the majority declares that, pursuant to HRS §§ 663-12 (1993) and -17, "although a trial court has 'discretion' to include, or to decline to include, a non-party on the special verdict form, it does not, *as a matter of law*, have the authority to include a non-party who has not been brought into the case by pleading pursuant to" those statutes. Majority opinion at 26 (emphasis added). Respectfully, HRS §§ 663-12[6] and 663-17[7] apply to the issue of contribution, which is manifestly distinct from the issue of apportioning fault among all culpable parties. Thus, those statutes are inapposite to the issue of apportionment. Apportionment is related to the relative *fault* of the parties, whereas contribution concerns the relative *liability* of joint tortfeasors *to each other.* Thus, while HRS § 663-17 may require a joint tortfeasor to cross claim against his or her codefendants in order to obtain *contribution*, those statutes do not require that a person be named as a party in order to be considered a legal cause of the plaintiff's injury.

The plain language of those statutes indicates that they speak solely to the relationship of joint tortfeasors to each other. HRS § 663-12 first preserves the right of contribution *"among joint tortfeasors."* (Emphasis added.) It then sets forth the circumstances under which one joint tortfeasor may demand contribution from another, and when the joint tortfeasor may not seek contribution. *Id.* Finally, the statute provides that if the joint tortfeasors are determined to have significantly disparate degrees of fault such that "equal distribution ... of the common liability" among them would be "inequitable[,]" they will be required to pay their pro rata shares of the damages as determined by the apportionment of fault. *Id.*

Thus, HRS § 663-12 does not control when the fault of a joint tortfeasor may be considered in determining the legal cause(s) of a plaintiff's injuries. Rather, it speaks to the relationship between defendants who are determined to be legal causes of the plaintiff's injuries. In that connection, HRS § 663-17 provides that joint tortfeasors will be required to pay pro rata shares of the damages "only if the proportionate fault [of the joint tortfeasors] is litigated *between them* by pleading in that action." (Emphasis added.) Again, that statute does not concern whether the tortfeasor was a legal cause of the plaintiff's damages, but rather, whether the joint tortfeasors will be equally liable for those damages.[8]

---

6. HRS § 663-12, entitled "Right of contribution; accrual; pro rata share[,]" provides that:
 *The right of contribution exists among joint tortfeasors.*
 A joint tortfeasor is not entitled to a money judgment for contribution until the joint tortfeasor has by payment discharged the common liability or has paid more than the joint tortfeasor's pro rata share thereof.
 A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.
 *When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares, subject to section 663-17.*
 (Emphases added.)

7. HRS § 663-17 (1993 & Supp.2007), entitled "Third-party practice; enforcement of right to

contribution; unnamed defendants and third party defendants[,]" provides in relevant part that:

 (a) *A pleader may,* as provided by the rules of court, *bring in as a third-party defendant a person not a party to the action who is or may be liable to the pleader or to the person claiming against the pleader, for all or part of the claim asserted against the pleader in the action* ....

 ....

 (c) *As among joint tortfeasors who in a single action are adjudged to be such, the last paragraph of section 663-12 applies only if the issue of proportionate fault is litigated between them by pleading in that action.*

 ....

 (Emphases added.)

8. Relatedly, the majority's argument that including Tupuola on the special verdict form would not collaterally estop him from relitigating his proportion of fault in a subsequent action for contribution appears to be peripheral to the question at bar. Majority opinion at 399-400,

As applied to this case, HRS § 663–12 would instruct that, had Respondents and Tupuola each been found liable for Petitioner's injuries, either liable party could seek contribution from the other, provided that the party seeking contribution had paid more than its share of the damages. However, because Respondents did not successfully interplead Tupuola, the relative degree of fault between Respondents and Tupuola was not actually litigated in the pertinent action. Thus, HRS § 663–17 would operate to make Respondents equally liable with Tupuola as joint tortfeasors. Manifestly, then, HRS §§ 663–12 and –17 are not relevant to the issue of Tupuola's inclusion on the special verdict form.

2.

The majority takes issue with the foregoing analysis, deeming it necessary to relate the history of the UCATA. Majority opinion at 399, 191 P.3d at 1076. Respectfully, while this is interesting background, it has no bearing on the disposition of this case. It is true that the aforementioned statutes require a determination of apportionment before the right to *pro rata* contribution may be enforced. Thus, where the rules governing contribution apply, so must the rules governing apportionment. However, the converse is not true. As demonstrated in *Doe Parents No. 1* and the *Ozaki* cases, apportionment may be relevant even where contribution is unavailable. Thus, the majority's insistence that the UCATA provisions related to contribution govern the question of whether Tupuola could be included on the special verdict form at the court's discretion is logically unsound.

191 P.3d at 1076–77. Manifestly, this court is not faced with an action by Respondents attempting to recover pro rata contribution from Tupuola. Thus, the question of whether Respondents would hypothetically be permitted to pursue contribution under the UCATA is immaterial to whether the court had discretion to include Tupuola on the special verdict form and has no bearing on the question of whether it abused that discretion.

Although the majority implies otherwise, it has never been disputed that the UCATA's directive

The majority charges that this opinion construes the language of HRS §§ 663–12 and –17 "in a vacuum" and "fails to take into account the paramount reason for the UCATA's existence." Majority opinion at 399, 191 P.3d at 1076. With all due respect, the analysis comports with the mandate that "[w]hen construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Paul v. Dep't of Transp.*, 115 Hawai'i 416, 426, 168 P.3d 546, 556 (2007) (quoting *Gray v. Admin. Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997)). As to the purpose of the UCATA, which is also pertinent to the construction of its language, *see id.*, the title of the statute—the Uniform *Contribution Among Tortfeasors* Act—clearly indicates to whom it is applicable. Furthermore, the majority's emphasis on a so-called "telescoping mechanism," majority opinion at 399–400, 191 P.3d at 1076–77, is misplaced inasmuch as, to the extent it can be discerned, "telescoping" the proper apportionment of liability and the corresponding pro rata contribution for Petitioner's damages among Respondents and Tupuola is not at issue in this case.

Ironically, although the majority asserts that this opinion's analysis of the UCATA provisions is inapt because "[i]f contribution is not possible, the UCATA is simply not implicated[,]" *id.* at 399, 191 P.3d at 1076, it is the majority that relies on those very provisions to support its contention that Tupuola's exclusion from the special verdict form was required as a matter of law. *See id.* at 398–99, 191 P.3d at 1075–76 (concluding that because "Respondents failed to litigate the issue of proportionate fault[,]" Tu-

that the issues of proportionate fault and pro rata contribution be litigated in the same action promotes judicial efficiency. *See id.* at 400, 191 P.3d at 1077 n. 10. However, what the majority posits as a concern is simply not relevant to Petitioner's argument that the court abused its discretion in including Tupuola on the special verdict form. Manifestly, this case does not involve joint tortfeasors seeking pro rata contribution from each other, therefore, the concerns about duplicative litigation are not pertinent here.

puola "could not have been included on the special verdict form *as a matter of law*" pursuant to HRS § 663–17(c) (emphasis added)). Because the majority agrees that "[t]he UCATA was designed to facilitate" joint tortfeasors "obtain[ing] contribution from one another," *id.* at 399, 191 P.3d at 1076, it apparently concedes that the UCATA is not applicable in the instant case, given that Respondents are not seeking pro rata contribution from Tupuola. Accordingly, it follows that the majority's reliance on the UCATA, as the law which purportedly mandates the exclusion of nonparty joint tortfeasors generally, is misapplied.

Furthermore, the case law of this jurisdiction indicates that, in cases involving an intentional tortfeasor and a negligent tortfeasor, it is acceptable to include the intentional tortfeasor on the verdict form, regardless of whether the plaintiff may actually recover any damages from the intentional tortfeasor, *i.e.*, whether the intentional tortfeasor is a party to the action. The cases discussed below, although not dispositive of the outcome here, demonstrate that the decision to include a non-party joint tortfeasor is a matter for the court's discretion.[9] Moreover, allowing the fact finder to consider the fault of *all* joint tortfeasors, whether or not judgment may be entered against them, serves

the underlying policy of assigning tort liability in proportion to fault.

## VI.

In *Doe Parents No. 1*, two elementary school students [collectively, the girls] and their parents [collectively, the plaintiffs] sued, *inter alia*, the Department of Education (DOE) and Lawrence Norton (Norton), the girls' teacher, after Norton allegedly molested the girls. 100 Hawai'i at 41, 52, 58 P.3d at 552, 563. After finding the DOE liable for its own negligent actions, the circuit court, in assessing damages, considered the "substantial factor" of Norton's intentional conduct despite the fact that it had previously dismissed all claims against Norton "[b]ecause of a contemporaneous voluntary bankruptcy proceeding involving [him.]" *Id.* at 56, 58 P.3d at 567.

On appeal, this court stated, in *dictum*, that if the DOE had been found liable under the plaintiffs' alternative theory of liability (*respondeat superior*), then the DOE would have been liable only for its *pro rata* share of the plaintiffs' damages, *i.e.*, it would have been necessary to apportion liability among the joint tortfeasors.[10] *Id.* at 87, 58 P.3d at 598. Accordingly, the circuit court would have had to consider Norton's degree of fault, even though plaintiffs could not recover damages from him, to determine the DOE's *pro rata* share.[11] *Id.*

9. Respectfully, the majority's heightened response to the analysis of *Doe Parents No. 1* and *Ozaki II*, *see* majority opinion at 400–02, 191 P.3d at 1077–79, is wrongly directed. Specifically, this opinion does not obscure (1) the fact that the intentional tortfeasors in those cases were initially named as defendants, and thus, "pleaded in" to the proceedings although they were subsequently rendered immune from judgment, (2) that the language in *Doe Parents No. 1* relied upon is *dictum*, or (3) that the central holding in *Ozaki II* is inapplicable to the instant case, the main objections raised by the majority. *See* majority at 401–02, 191 P.3d at 1078–79.

The majority's position is that unless a party has pled against a joint tortfeasor, a non-party joint tortfeasor cannot be included on the verdict form. *See* majority opinion at 398, 191 P.3d at 1075 (holding that "as a matter of law, exclusion is mandated when a party fails to protect its rights"). As discussed *infra*, this is plainly contrary to the directive in *Gump II* that the content of the special verdict form is a matter for the trial court's discretion. *See Gump II*, 93 Hawai'i

at 422, 5 P.3d at 412 (explaining that "[n]on-parties may be considered joint tortfeasors under the UCATA and, in the trial court's *sound discretion*, may be included on a special verdict form" (emphasis added)).

10. The central holding in *Doe Parents No. 1* was based on the non-retroactivity clause of HRS § 663–10.5, which made the apportionment between governmental tortfeasors and other tortfeasors applicable only to "causes of action based upon acts or omissions occurring on or after June 22, 1994[.]" 100 Hawai'i at 86, 58 P.3d at 597 (quoting 1994 Haw. Sess. L. Act 214, § 4 at 517) (internal quotation marks and emphasis omitted). Inasmuch as the negligent retention and supervision of Norton occurred before June 22, 1994, the DOE was not protected from full joint and several liability under HRS § 663–10.5. *Id.* at 87, 58 P.3d at 598. Thus, the majority held that the circuit court had erred in apportioning liability between the DOE and Norton. *Id.* at 88, 58 P.3d at 599. Inasmuch as HRS § 663–10.5 is not implicated in the instant case, that analysis is inapplicable here.

Similarly, *Ozaki v. Ass'n of Apartment Owners of Discovery Bay*, 87 Hawai'i 265, 954 P.2d 644 (1998) [hereinafter, "*Ozaki II* "], considered the proper application of Hawaii's joint and several liability statutes where the potentially liable parties had differing levels of culpability. In that case, Cynthia Dennis (Cynthia) was murdered by her estranged boyfriend, Peter Sataraka (Sataraka), in her apartment in the Discovery Bay condominium (Discovery Bay). *Id.* at 266, 954 P.2d at 645.

Cynthia's estate and her mother, Teruko Dennis (Teruko) [collectively, the plaintiffs] filed suit against Sataraka, the intentional tortfeasor, and Discovery Bay, the negligent tortfeasor. *Id.* at 267, 954 P.2d at 646. The plaintiffs obtained default judgments against Sataraka, the intentional tortfeasor. *Ozaki I*, 87 Hawai'i at 277, 954 P.2d at 656. Despite Sataraka's absence from the proceedings, he was included on the special verdict form. *Id.* at 278, 954 P.2d at 657. The jury attributed ninety-two percent of the fault to Sataraka's intentional conduct, five percent to Cynthia's negligent conduct, and three percent to Discovery Bay's negligent conduct. *Id.* The circuit court ruled that because "[Cynthia's] negligence was greater than" Discovery Bay's, the plaintiffs had not prevailed against Discovery Bay. *Id.*

On appeal, the ICA disagreed, holding that, pursuant to the UCATA, as adopted by the Hawai'i Legislature, "joint tortfeasors are defined by HRS § 663–11 as 'two or more persons jointly or severally liable in tort for the same injury to person or property, *whether or not judgment has been recovered against all or some of them.*' " *Id.* at 284, 954 P.2d at 663 (emphasis added). "Applying [that] definition of joint tortfeasors[,]" the ICA concluded that "Discovery Bay and Sataraka [were] joint tortfeasors." *Id.*

On writ of certiorari, this court held that HRS § 663–31 (1993), the comparative negligence statute, *did* apply to Discovery Bay, because "negligence was the sole theory advanced against it[.]" *Ozaki II*, 87 Hawai'i at 270, 954 P.2d at 649 (emphasis omitted). Thus, this court concluded that, because Cynthia's conduct was more negligent than Discovery Bay's conduct, she could not recover any damages from Discovery Bay. *Id.* However, because Discovery Bay and Sataraka could have been joint tortfeasors under HRS § 663–11—if the jury had determined that Discovery Bay's percent of fault was greater than Cynthia's, *id.*—this court did not intimate that Sataraka's role in causing the plaintiffs' injuries should not have been considered in determining the relative fault of the parties.[12]

11. The majority takes issue with this analysis, apparently believing that this opinion means to distinguish the facts of *Doe Parents No. 1* from the majority's resolution of the instant case. *See* majority opinion at 401–02, 191 P.3d at 1078–79. The majority is mistaken. As noted before, *Doe Parents No. 1* is cited as an example where, under the circumstances, the court did not abuse its discretion in including a joint tortfeasor on the special verdict form despite the fact that the individual was judgment-proof. It appears that the majority's objection to this reliance on *Doe Parents No. 1* is that it falls under the "exceptions to the explicit 'pleading' requirement," majority opinion at 398, 191 P.3d at 1075, imposed by that majority in that Norton, similar to the defendant in *Kaiu*, was immune from judgment pursuant to an order of the bankruptcy court, *id.* at 401, 191 P.3d at 1078.

However, because, in my view, the "exceptions" enumerated by the majority, *id.* at 398, 191 P.3d at 1075, are not exceptions to a bright line rule but, rather, examples of circumstances in which the court would not abuse its discretion by including a non-party joint tortfeasor on a special verdict form, the majority's assertion that

*Doe Parents No. 1* is consistent with its opinion is inapposite to this concurrence's discussion of that case. It is reiterated that the disagreement is not concerned with whether the inclusion of Norton on the special verdict form is compatible with the result under the majority's rule here, but whether the majority's categorical approach is compatible with the discretion afforded the trial courts in formulating the content of special verdict forms.

12. In focusing on the *Ozaki II* court's reliance on HRS § 663–31 to distinguish the *Ozaki* cases from the instant case, *see* majority opinion at 399, 191 P.3d at 1079, for some unknown reason, the majority attempts to discount the analysis herein by emphasizing distinctions which have already been acknowledged, *see supra* note 8. Despite that fact that the central holding of *Ozaki II* is not dispositive of the instant case, it aptly demonstrates that the specific circumstances of any particular case are of paramount importance to a court's exercise of its discretion to consider the proportionate fault of a non-party joint tortfeasor.

## VII.

*Doe Parents No. 1* and *Ozaki II* are examples of precedent in which the fault of the intentional tortfeasor was included in the special verdict form, although any finding of liability against the individual would not result in a judgment against him. Thus, these cases demonstrate that there *may* be circumstances in which a determination of the proportional fault of a nonparty joint tortfeasor may be appropriately considered. Given this opinion's position that the content of special verdict forms are within the province of the court's discretion and the majority's rejection of that proposition, it is difficult to discern why the majority claims to be "confound[ed]" by reliance on cases where the courts properly exercised that discretion. *See* majority opinion at 401, 191 P.3d at 1078.

In that connection, the majority asserts that this opinion "undertak[es] to demonstrate an inconsistency with our present holding that, as a matter of law and pursuant to HRS §§ 663–12 and –17, a nonparty not pleaded into the case cannot be placed on the special verdict [form] absent the appropriate circumstances set out in *Gump II*." *Id.* The majority resolves this perceived inconsistency by noting that "Norton's discharge of debt through bankruptcy proceedings is akin to the nonparty in *Kaiu*, who was not named as a party due to a bankruptcy stay." *Id.* (citation omitted). To reiterate, the essential critique of the majority's position is that *Gump II* held that the inclusion of nonparty joint tortfeasors on a special verdict form falls within the court's discretion and *Doe Parents No. 1* and *Ozaki* are examples of cases where the circumstances supported the trial court's decision to exercise its discretion to consider the fault of such a tortfeasor. Accordingly, assuming, *arguendo*, that the facts of those cases are "compatible with [the majority's] analysis" in this case, *id.*, insofar as the nonparty joint tortfeasors in *Doe Parents No. 1* and *Ozaki* were named as parties at

some point during the proceedings, the fact remains that the inclusion of Norton and Sataraka on the respective verdict forms remained within the court's discretion. In my view, the decision in this case to limit the court's discretion regarding the content of special verdict forms is patently inconsistent with *Gump II*, regardless of whether the facts of *Doe Parents No. 1* and *Ozaki* fall within the "exceptions" identified by the majority.

The majority reiterates Petitioner's argument that "according to *Gump I* and *Gump II*, although placing nonparties on the special verdict form is a matter within the trial court's discretion, it is an abuse of discretion to do so where the defendant inordinately delays naming the nonparty as an additional party for tactical reasons and assumes the risk of non-inclusion." *Id.* at 397, 191 P.3d at 1074 (citation and internal quotation marks omitted). In my view the court abused its discretion under the circumstances of this case, not because Tupuola had never been made a party, but because the court had previously ruled that Tupuola's fault was not relevant to Petitioner's theory of liability against Respondents and Petitioner relied on that ruling in presenting his case. However, there can be circumstances where a joint tortfeasor has never been made a party, but it would nevertheless be within the court's discretion to include him or her on the verdict form. The *Gump* cases and those cases discussed *supra* expressly allow for the inclusion of nonparty joint tortfeasors on special verdict forms.

## VIII.

### A.

As to point (3) above, I agree that the improperly given instruction on the foreseeability of criminal acts under ordinary circumstances, necessarily infected the jury's verdict.[13] However, I would also hold that

---

13. The improper foreseeability instruction, as the majority notes, "was prejudicially erroneous" in that it was "inconsistent and misleading" because it instructed the jury as to liability for criminal acts under "ordinary circumstance[s]." Majority opinion at 392, 191 P.3d at 1069 (citations and internal quotation marks omitted).

Contrarily, this case involved liability for criminal acts where Respondents had a "special relationship" with Petitioner, and therefore, the circumstances of the assault on Petitioner were not "ordinary." *Id.* (citations and internal quotation marks omitted).

the dram shop liability instructions were misleading and prejudicial because they were unrelated to the issues presented to the jury. Thus, on remand, I would exclude those instructions.

Related to the dram shop liability instructions, in *Ono v. Applegate*, 62 Haw. 131, 136, 612 P.2d 533, 538 (1980), this court established that "a person injured by an inebriated tavern customer [may] recover from the tavern that provided liquor to the customer." (Footnote omitted.) In *Bertelmann v. Taas Assocs.*, 69 Haw. 95, 100, 735 P.2d 930, 933 (1987), this court clarified that such relief did not extend to the intoxicated client (adopting the majority view and "reject[ing]" the contention that intoxicated liquor consumers can seek recovery from the bar or tavern which sold them alcohol"). Rather, "[d]runken persons who harm themselves are solely responsible for their voluntary intoxication and cannot prevail under a common law or statutory basis." *Id.* (citation omitted).

Thus, this court declared that "in the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises, of itself, does not constitute actionable negligence." *Id.* at 101, 735 P.2d at 934 (citation and footnote omitted). The underlying rationale of this limitation on dram shop liability was that the statutes prohibiting the sale of alcohol to persons who were already intoxicated was "*to protect the general public from drunk driving accidents*, not to reward intoxicated liquor consumers

for the consequences of their voluntary inebriation." *Winters v. Silver Fox Bar*, 71 Haw. 524, 528, 797 P.2d 51, 53 (1990) (emphasis added).[14]

### B.

Manifestly, the doctrine of dram shop liability is not relevant. Petitioner claims that the lack of security and Respondents' failure to render aid were a legal cause of his injuries. Significantly, he does not claim that those injuries were the result of Respondents selling or serving alcohol to either him or Tupuola.[15] Thus, even assuming, *arguendo*, that the dram shop liability instructions were given to clarify the contours of Respondents' potential liability, the instructions were so disconnected from Petitioner's theory of the case and the evidence presented to the jury, that it must be concluded that they were prejudicially misleading. *See State v. Schmidt*, 92 Conn.App. 665, 886 A.2d 854, 863 (2005) (upholding trial court's decision not to give defendant's requested instruction because the instruction "did not logically relate to the issues to be determined by the jury"); *Cole v. Raut*, 378 S.C. 398, 663 S.E.2d 30, 33 (2008) (holding that "*[a] jury charge consisting of irrelevant and inapplicable principles may confuse the jury* and constitutes reversible error where the jury's confusion affects the outcome of the trial" (emphasis added) (citation omitted)).

Admittedly, testimony about the club's sale of alcohol was presented. In that connection,

14. Thus, it is not surprising that this state's cases brought on the theory of dram shop liability (or arguing for an extension of that doctrine) arise from drunk driving accidents. *Reyes v. Kuboyama*, 76 Hawai'i 137, 139, 870 P.2d 1281, 1283 (1994) (plaintiff was injured in car accident caused by intoxicated minor who was served alcohol which the defendant had sold to another minor); *Winters*, 71 Haw. at 526, 797 P.2d at 52 (plaintiff's decedent was killed in a car accident after being sold alcohol by defendant); *Feliciano v. Waikiki Deep Water, Inc.*, 69 Haw. 605, 606, 752 P.2d 1076, 1077 (1988) (plaintiff, who was rendered quadriplegic when he drove his truck off the road, argued that defendant's aggressive sales policy "constituted a breach of the duty of a bar or tavern to avoid affirmative acts that increase the peril to an intoxicated customer"); *Bertelmann*, 69 Haw. at 96, 735 P.2d at 931 (plaintiffs' decedent was killed in a single-car

crash after being served alcohol by defendant); *Ono*, 62 Haw. at 132, 612 P.2d at 536 (defendant sold alcohol to already-intoxicated customer who subsequently caused an automobile accident in which plaintiffs were injured); *Faulk v. Suzuki Motor Co.*, 9 Haw.App. 490, 495, 851 P.2d 332, 333 (1993) (holding that defendant, "a social host server of alcoholic beverages, ... was not liable for injuries his intoxicated guest ... negligently caused to [plaintiff] in an automobile accident").

15. In this regard, the majority's reliance on the fact that Petitioner asserted that the club was selling or serving alcohol on the night of the incident is misplaced. *See* majority opinion at 393, 191 P.3d at 1070. The critical point is that Petitioner did not assert this as a theory under which Respondents would be liable for his injuries.

(1) during Petitioner's opening statement, he stated that the evidence would show that (a) Respondents were "allowing the sale of alcohol on their premises," and (b) Respondents had "knowledge of drinking and ... the problems that would occur," but, to save money, did not hire security; (2) during Petitioner's direct examination, he testified that (a) the cab driver asserted that he could drink at the club after hours, and (b) that he "was asked for money to get more alcohol"; (3) during Respondent's cross-examination of Petitioner, he testified that he thought the club "was a regular bar where beer was regularly sold"; (4) during Petitioner's redirect examination, he confirmed his earlier statement to police that he was "not sure if they were selling [alcohol], they must have been, it was in a beer cooler"; (5) during Petitioner's direct examination of Kyong Suk Son (Son),[16] who owned the Club from 1993 to 2000, he questioned her about whether people could purchase alcohol at the club; (6) during Respondent's cross examination of Yu, she denied having "sold or given away alcoholic beverages to customers" in the club; (7) during Petitioner's closing argument, he posited that the club "was a business establishment that made money catering to members of the drinking public after-hours."

However, both parties emphasized that the issue of the club selling or serving alcohol was tangential to the issues before the jury. During closing argument, Petitioner first stated that "[w]e're not here to enforce the liquor laws for the City and County of Honolulu. *We're here to determine whether or not it was foreseeable that [Petitioner] or anybody else could well meet a customer who was either inebriated or looking for trouble between 4:00 and 6:00 a.m.*" (Emphasis added.) Respondents countered that it was un-

clear "why there was all this testimony about whether beers were served, [and] where they came from. *There's no connection to [the club* ].... I suggest to you that evidence was brought up just to try to smear the club...." (Emphasis added). In his rebuttal, Petitioner addressed this contention, informing the jury that "*[t]he reason [he] brought in testimony about serving liquor was because [Respondents] had a dangerous operation going. They had drinking people after hours, they were taking the spillover from the bars at night.*" (Emphasis added.)

However, rather than a basis for liability, the question was whether the alleged practice of selling alcohol created a dangerous situation from which Respondents were obligated to protect Petitioner. Accordingly, I respectfully disagree with the majority's holding that the dram shop liability jury instructions [17] were "a prophylactic act, which clarified the contours of the Respondents' potential liability." Majority opinion at 394, 191 P.3d at 1071. Because Respondents' liability was not premised on injuries resulting from a patron's intoxication, dram shop liability was not germane to the issues before the jury.

## IX.

For the reasons stated above, I concur that the court's March 5, 2004 judgment should be vacated and the case remanded for a new trial, but on the grounds specified.

---

16. Son and Karin Hyon Suk Yu (Yu), who started managing the Club in 1999 and purchased it in 2000, were called by Petitioner as adverse witnesses.

17. The instructions complained of informed the jury that:

Intoxicated liquor consumers may not seek recovery from the establishment which sold them alcohol; *they are solely responsible for their own voluntary intoxication.*

In the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises does not constitute actionable negligence.

(Emphasis added.)